Source: Legal > Cases - U.S. > All Courts - By Circuit > **1st Circuit - Federal & State Cases, Combined** ⓘ

Terms: **"smiley" /20 "maloney" and "cohen"**  (Edit Search)

*2003 U.S. Dist. LEXIS 24902, \**

TABUE **SMILEY,** Petitioner v. MICHAEL T. **MALONEY,** Respondent

Civil Action No. 01-11648-GAO

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2003 U.S. Dist. LEXIS 24902

October 31, 2003, Decided

**SUBSEQUENT HISTORY:** Accepted by, Petition dismissed by **Smiley v. Maloney,** 2004 U.S. Dist. LEXIS 3985 (D. Mass., Mar. 2, 2004)

**PRIOR HISTORY:** Commonwealth v. Smiley, 431 Mass. 477, 727 N.E.2d 1182, 2000 Mass. LEXIS 246 (2000)

**DISPOSITION:  [\*1]**  Magistrate recommended that petitioner's petition for writ of habeas corpus be dismissed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** A grand jury indicted petitioner prisoner for the murder of a person, illegal possession of a firearm, the kidnapping of two other persons, and armed assault in a dwelling. The prisoner was convicted. He then filed a habeas petition under the provisions of 28 U.S.C.S. § 2254 in which he sought to vacate his convictions. The matter was referred to a magistrate.

**OVERVIEW:** Among the prisoner's grounds for relief were that (1) he was denied effective assistance of counsel in connection with a statement he made to police prior to indictment; and (2) the jury instructions did not require the jury to find each and every element of the crime of armed assault in a dwelling. The magistrate found that, assuming the prisoner's retained counsel provided bad advice as to whether the prisoner's statement could be used at trial, there was no basis for habeas relief. There was not a scintilla of evidence indicating that the Commonwealth used his statement for impeachment purposes, or used the statement to "formulate" and shape the testimony of the prisoner's cousin at trial. As to the second claim, the

prisoner did not advance a single argument suggesting that the trial judge's instruction on the offense of entering a dwelling while armed and committing an assault with intent to commit a felony was unconstitutional in any respect. In any case, the state courts' interpretation of Mass. Gen. Laws ch. 265, § 18A, and the appropriate instructions for that offense as so construed, was a matter of state law, not subject to second guessing by a federal habeas court.

**OUTCOME:** The magistrate recommended that the petition for a writ of habeas corpus be dismissed on the merits for failure to state a claim upon which relief could be granted.

**CORE TERMS:** armed robbery, dwelling, armed assault, felony, assault, murder, armed, indictment, intent to commit, felony murder, ineffective assistance of counsel, felony-murder, writ of habeas corpus, essential element, involuntary, jury to find, cooperate, federal habeas, suppress, advice, interrogation, wit, arraignment, prosecutor, sentence, vis a vis, apartment, first degree murder, new counsel, impeachment

### LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues

*HN1* Under the 1996 amendments to the federal habeas statute, a petitioner must show that the state court's decision was contrary to, or involved an unreasonable application of, U.S. Supreme Court precedent. 28 U.S.C.S. § 2254(d)(1). That is to say, first, the habeas court must determine whether the Supreme Court has prescribed a rule that governs the petitioner's claim. And under settled precedent in the United States Court of Appeals for the First Circuit, a state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. If not "contrary to", then the habeas court must then determine whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues 

*HN2* The "unreasonable application" prong of 28 U.S.C.S. § 2254(d)(1) permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from the U.S. Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. In other words, a federal court may grant relief when a state court has misapplied a governing legal principle to a set of facts different from those of the case in which the principle was announced. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues

*HN3* For purposes of 28 U.S.C.S. § 2254(d)(1), in order for a federal court to find a state court's application of U.S. Supreme Court precedent

"unreasonable," the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable.  More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues

*HN4* In the United States Court of Appeals for the First Circuit for purposes of habeas review, if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application. Thus, some increment of incorrectness beyond error is required. The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the habeas court.  More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues

*HN5* For purposes of 28 U.S.C.S. § 2254(d)(1), in determining the existence vel non of prior U.S. Supreme Court precedent, a habeas court must look to established precedent - excluding dicta - which existed at the time of the state court decision being reviewed by the habeas court.  More Like This Headnote

Criminal Law & Procedure > Interrogation > Miranda Rights > Custodial Interrogation
Criminal Law & Procedure > Interrogation > Voluntariness
Criminal Law & Procedure > Witnesses > Impeachment

*HN6* The use of a statement taken in violation of Miranda is clearly admissible for impeachment purposes without offending the Fifth and Sixth Amendments of the United States Constitution, unless the statement was "involuntary" in the traditional and accepted meaning of the term, "involuntary."  More Like This Headnote

Criminal Law & Procedure > Interrogation > Voluntariness

*HN7* The "involuntariness" standard, at least where there is no physical abuse, generally depends on whether under the totality of the circumstances the defendant's will was overborne. The absence of a lawyer does not itself automatically render a statement involuntary.  More Like This Headnote

Constitutional Law > Procedural Due Process > Self-Incrimination Privilege
Criminal Law & Procedure > Interrogation > Miranda Rights > Notice & Warning
Criminal Law & Procedure > Pretrial Motions > Suppression of Evidence

*HN8* In the United States Court of Appeals for the First Circuit, an unintentional or negligent violation of Miranda does not warrant suppression of the fruits of the Miranda violation.  More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues

*HN9* A federal habeas court sits to correct errors which affects substantial rights.  More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues

*HN10* If a habeas court is limited to looking at federal precedent in existence

at the time the state court decision is issued, it follows a fortiori that the habeas court is not the court to forge new constitutional rules and principles. More Like This Headnote

Criminal Law & Procedure > Trials > Defendant's Rights > Right to Due Process
Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution
HN11 The Fifth and Fourteenth Amendments require, at a minimum, that the prosecution prove each and every element of the offense charged beyond a reasonable doubt. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Cognizable Issues
HN12 For purposes of habeas review, a state-court decision is "contrary to" clearly established U.S. Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court's precedent. Avoiding these pitfalls does not require citation of the Supreme Court's cases. Indeed, it does not even require awareness of the cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies
HN13 The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; oblique references which hint that a theory may be lurking in the woodwork will not turn the trick. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies
HN14 The requirement for the exhaustion rule, grounded in constitutional notions of comity, is to ensure that state courts have the first opportunity to correct their constitutional errors. More Like This Headnote

Criminal Law & Procedure > Counsel > Effective Assistance > Trials
Criminal Law & Procedure > Counsel > Effective Assistance > Tests
HN15 It can hardly be said that trial counsel performance, in failing to advance a claim which was without merit and which was plainly wrong, fell below an objective standard of reasonable effectiveness within the meaning of Strickland v. Washington. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Exhaustion of Remedies
Criminal Law & Procedure > Habeas Corpus > Habeas Corpus Procedure
HN16 Even if a claim or claims are not exhausted, and the petition is appropriate for dismissal for want of exhaustion, as a "mixed" petition or otherwise, a court may nevertheless dispose of nonmeritorious claims on the merits without reaching the exhaustion issue. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Habeas Corpus Procedure

HN17 It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief. More Like This Headnote

Criminal Law & Procedure > Habeas Corpus > Habeas Corpus Procedure

HN18 See R. Governing § 2254 Cases U.S. Dist. Cts. 2(c).

Criminal Law & Procedure > Criminal Offenses > Homicide > Felony Murder

HN19 In Massachusetts, an underlying but uncharged felony may serve as the basis for a felony-murder conviction. More Like This Headnote

**COUNSEL:** For Tabue **Smiley,** Petitioner: John M. Thompson, LEAD ATTORNEY, Thompson and Thompson, PC, Springfield, MA.

For Michael **Maloney,** Defendant: Cathryn A. Neaves, LEAD ATTORNEY, Attorney General's Office, Boston, MA.

**JUDGES:** Lawrence P. **Cohen,** UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** Lawrence P. **Cohen**

**OPINION:** REPORT AND RECOMMENDATION ON PETITION FOR A WRIT OF HABEAS CORPUS

**COHEN,** M.J.

This is a habeas case brought under the provisions of 28 U.S.C. § 2254 in which petitioner seeks to vacate his convictions in the Hampden County Superior Court. For the reasons which follow, this court recommends that the district judge to whom this case is assigned dismiss the petition for failure to state a claim upon which relief may be granted.

I. Procedural History

A Hampden County grand jury indicted the petitioner for the murder of Oliver Edwards, illegal possession of a firearm, the kidnaping of Eric Williams and June Johnson, and armed assault in a dwelling. n1 After a jury trial, petitioner was convicted **[*2]** of first-degree murder, indicating by special verdicts that both armed robbery and armed assault in a dwelling constituted the underlying felonies. The petitioner also was convicted of the remaining charges against him. The petitioner was sentenced to a mandatory life term for his first-degree murder conviction and to lesser concurrent sentences for his convictions for kidnaping and illegal possession of a firearm. The petitioner's conviction for armed assault in a dwelling was filed with the petitioner's consent. The petitioner then filed a motion for new trial on November 28, 1997, which the trial court denied after a non-evidentiary hearing, on August 31, 1998. On May 12, 2000, after conducting plenary review of the petitioner's case under M.G.L. c. 278, § 33E, the Massachusetts Supreme Judicial Court affirmed both the petitioner's convictions and the trial court's denial of his motion for new trial. *Commonwealth v. Smiley,* 431 Mass. 477, 727 N.E.2d 1182 (2000). His petition seeking habeas corpus relief was filed in this court on or about

September 25, 2001.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 The record indicates that the murder indictment was the first of the indictments returned, and that indictment was returned on November 8, 1993. He first entered a plea of not guilty on that indictment on November 22, 1993. The indictments adding the additional charges were returned on later dates.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*3]**

II. Facts at Trial

The following facts *vis a vis* the crimes charged, as recounted by the Supreme Judicial Court in its opinion, and the sufficiency of which is not challenged here, were as follows:

On October 31, 1993, the petitioner, Dennis Hardy, Fred Shinholster, Calvashon Johnson, and Shandell Redd planned to rob Oliver Edwards of drugs and money. To accomplish the robbery, they first went to Eric Williams' apartment to order drugs. Williams, who sold drugs for Edwards, paged Edwards and Edwards came to Williams' apartment. Subsequently, the petitioner and others held Williams and Edwards at gunpoint and forced them to go to Edwards' apartment.

After arriving at Edwards' apartment, Hardy confined Williams in a closet. Hardy and others forced Edwards onto a couch in the living room with his girl friend, June Johnson, who had been present in the apartment when they entered. Hardy and Shinholster threatened Edwards and Johnson to get them to divulge the location of drugs and money in the apartment. Edwards eventually stated that there was cocaine in the basement. Redd and the petitioner went to search the basement.

Hardy took Edwards to the basement stairs. He shot **[*4]**  Edwards, causing Edwards to fall down the stairs. Hardy then returned to the living room and shot Johnson, despite the petitioner's protests. At one point, Hardy's pistol jammed, so he took the petitioner's pistol. Hardy next returned to the basement and shot Edwards two more times. Hardy also shot Williams twice. Johnson and Williams both survived, but Edwards died from multiple gunshot wounds.

Petitioner, Shinholster, and Johnson ran out of the apartment at the same time, before Hardy had finished his shooting rampage. They met up with Hardy and Redd at Rasheem Reid's house shortly thereafter. At Hardy's request, Shinholster hid the semiautomatic gun used earlier that night in a cemetery behind Reid's house.

A few days later, Shinholster turned himself into the police and led them to the cemetery where police recovered the gun. Shinholster testified against the

petitioner at trial.

III. Controlling General Principles

The general controlling principles governing the determination of habeas cases have been spread upon the record by this court on a number of occasions, but are repeated here.

In assessing the federal habeas corpus claims raised by the petitioner, the following **[*5]** general principles apply:

1. *HN1* Under the 1996 amendments to the federal habeas statute, the petitioner must show that the state court's decision "was contrary to, or involved an unreasonable application of," Supreme Court precedent. 28 U.S.C. § 2254(d)(1). *E.g., O'Brien v. DuBois,* 145 F.3d 16, 24 (1st Cir. 1998). That is to say, first, the habeas court must determine "whether the Supreme Court has prescribed a rule that governs the petitioner's claim." And under settled precedent in this Circuit, a "... state court decision is 'contrary to' federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.' *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)." Santiago v. Spencer, 346 F.3d 206, 2003 WL 22171559, * 5 (1st Cir. 2003). If not "contrary to", then the habeas court must then determine "whether the state court's use of (or failure to use) existing law in deciding the petitioner's **[*6]** claim involved an 'unreasonable application' of Supreme Court precedent."

As very recently observed by the Supreme Court of the United States (*Wiggins v. Smith,* 539 U.S. 510, 156 L. Ed. 2d 471, 123 S. Ct. 2527, 2534-2535 (2003)):

> We have made clear that *HN2* the "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. *Williams v. Taylor, supra,* at 413, 120 S. Ct. 1495; *see also Bell v. Cone,* 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003) (citing *Williams v. Taylor, supra,* at 407, 120 S. Ct. 1495). *HN3* In order for a federal court to find a state court's application **[*7]** of our precedent "unreasonable," the state court's decision must have been more than incorrect or erroneous. *See Lockyer [Lockyer v. Andrade,* 538 U.S. 63, 123 S. Ct. 1166, 1172-1173, 155 L. Ed. 2d 144 (2003)], *supra,* at    , 123 S. Ct. 1166, 1175. The state court's

application must have been "objectively unreasonable." See _Williams v. Taylor, supra,_ at 409, 120 S. Ct. 1495.

The rationale of that recent holding was more recently echoed and embraced by our Circuit as well (_Santiago v. Spencer, supra,_346 F.3d 206 at [WL]* 5), to wit:

A state decision involves an "unreasonable application" if the state court identifies the correct governing legal principle from a Supreme Court decision, but "unreasonably applies that principle to the facts of the prisoner's case." _Williams,_ 529 U.S. at 413. The reasonableness test is an objective one; in making its decision, a federal court must "ask whether the state court's application of clearly established federal law was objectively unreasonable." _Williams,_ 529 U.S. at 410-11. While reasonableness is a fluid concept, we have established **[*8]** some parameters for evaluating state court application of federal law. As we held in _McCambridge,_ HN4"if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." _McCambridge v. Hall,_ 303 F.3d 24 at 36. Thus, "some increment of incorrectness beyond error is required ... The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment" of this Court. _Id._ (Emphasis added).

HN5Moreover, in determining the existence _vel non_ of prior Supreme Court precedent, we must look to established precedent - excluding dicta - which existed at the time of the state court decision being reviewed by the habeas court. _Lockyer v. Andrade,_ 538 U.S. 63, 123 S. Ct. 1166, 1172-1173, 155 L. Ed. 2d 144 (2003). n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 There the Court said (_Id_):

As a threshold matter here, we first decide what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States " § 2254(d)(1). Andrade relies upon a series of precedents from this Court-_Rummel v. Estelle,_ 445 U.S. 263, 100 S. Ct. 1133, 63 L. Ed. 2d 382 (1980), _Solem v. Helm,_ 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637(1983), and _Harmelin v. Michigan,_ 501 U.S. 957, 111 S. Ct. 2680, 115 L.Ed

2d 836 (1991)-that he claims clearly establish a principle that his sentence is so grossly disproportionate that it violates the Eighth Amendment Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision" *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct 1495, 146 L.Ed 2d 389 (2000).In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision See *id.,* at 405, 413, 120 S. Ct. 1495; *Bell v. Cone,* 535 U.S. 685, 698, 122 S. Ct. 1843, 152 L.Ed 2d 914 (2002) (Emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*9]**

IV. Petitioner's Contentions

In a rather prolix petition for a writ of habeas corpus, which does not necessarily correspond to petitioner's memorandum in support of the petition (# 22), petitioner appears to raise four groundsupon which he seeks habeas relief, to wit: (1) Ground One - that he was denied ineffective assistance of counsel in connection with a statement he made to police prior to indictment; (2) Ground Two - the jury instructions "did not require the jury to find each and every element of the crime of armed assault in a dwelling; (3) Ground Three - that trial counsel was ineffective for his failure to object to the jury instructions relating to armed assault in a dwelling; n3 and (4) Ground Four - that the evidence was insufficient to support a finding of armed assault in a dwelling and felony murder. n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Respondent contends that petitioner did not exhaust this claim before the state courts. For his part, petitioner does not even address Ground Three in his memorandum in support (# 22) or his later Reply Memorandum (# 30)

n4 Those are the grounds asserted - Grounds One through Four - and nothing more. Although counsel for petitioner, consistent with some sort of word processing run amok, has sprinkled a number of addenda in the petition, Grounds One through Four are the only grounds asserted.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

**[*10]**

V. Ground One - Ineffective Assistance of Counsel before Indictment

On November 3, petitioner's mother engaged the services of Attorney Elton Williams to assist the defendant's surrender. Williams' primary practice was in Connecticut, having been a member of the Connecticut bar for some ten years as of 1993, and he also was a member of the Massachusetts bar, having been a member of that bar for some four years prior to 1993 He was a member of the Massachusetts Bar Association, the Connecticut Bar Association, and was also admitted to practice before the United States District Courts for the District of Massachusetts and the District of Connecticut. For some eight to nine years before 1993, he was a member of the Criminal Justice Act Panels for both the United States District Court for the District of Massachusetts and the United States District Court for the District of Connecticut. In that capacity, he had served as defense counsel in "hundreds" of cases. After consulting with Mr. Williams, the defendant gave a detailed statement to the police regarding the events of October 31. Mr. Williams served as the defendant's attorney for approximately four more weeks. He was subsequently **[*11]** replaced by appointed counsel.

Prior to trial, court-appointed counsel moved to suppress petitioner's statement to the police on the general grounds of ineffective assistance of counsel. In particular, court-appointed counsel claimed (1) that Mr. Williams did not advise petitioner "... as to what the purpose was going to be when the police were going to come to jail to interview hi[;]" (2) that Mr. Williams "failed to advise [petitioner] of any law with respect to not just murder by way of shooting someone but with respect to issues of joint venture and felony murder or conspiracy[;]" (3) that Mr. Williams "failed to intervene during the giving of [petitioner's] statement at any time to advise him not to make any statement [;]" and (4) that Mr. Williams "led [petitioner] to believe that by not writing a statement out, whatever he said cannot be used against him." n5 Court-appointed counsel specifically allowed that petitioner did not contend that the statement given by petitioner was the result of any misconduct on the part of the prosecution or police. n6

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 Further Supplemental Answer (# 20), Transcript of Motion to Suppress, pp. 11-12. **[*12]**

n6 Further Supplemental Answer (# 20), Transcript of Motion to Suppress, p. 9, to wit:

> With respect to the motion, what this motion is not, I'll start on that basis, it's not a motion to suggest that there was any improper conduct whatsoever on the part of the police or the Commonwealth in the case (Emphasis added).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

After an evidentiary hearing, at which petitioner, his mother, and Mr. Williams testified, the trial judge made the following findings of fact. n7

> After hearing and after arguments I find that on November third of 1993 the defendant pursuant to his request to turn himself in that was made to his mother and that she arranged to have counsel for him the defendant's mother arranged to have Attorney Alton Williams on a private basis represent the defendant and that on November third of 1993 she met Attorney Williams and the two of them then went to a location where the defendant had been hiding, avoiding arrest.

> When the three of them met they were enroute to the Springfield Police Department so that the defendant could turn himself in. Attorney Williams told him **[\*13]** at that time not to make any statements to the police.

> He was booked at the Springfield Police Department. He was given his Miranda rights at the Springfield Police Department. He understood them. At that time he made a statement. The defendant also told his attorney, Mr. Williams, that he wanted to cooperate with the District Attorney that it was a subject that the defendant himself had initiated.

> At the Springfield District Court on November third of 1993 where the defendant was arraigned, Attorney Williams had several brief conferences with him to get some background information and to get some information from him before about the nature of the case, about the facts of the case as well as Attorney Williams also obtained information prior to November third from attorney Perman Glenn who had been representing the codefendant and cousin of the defendant, Fred Shindholster.

> Attorney Glenn had briefed Mr. Williams about the case and Mr. Williams obtained further information about the case at the time of arraignment and day in requesting bail and describe the circumstances of this homicide to the District Court Judge. The defendant, again to counsel, indicated that he wanted to cooperate **[\*14]** with the District Attorney and Attorney Williams had approached the District Attorney in that regard.

> Attorney Williams had also received some written discovery at that time. Attorney Williams had approximately ten or eleven years of experience and he testified that although the bulk of his practice is personal injury cases, approximately I think he said eighty to eighty-five percent of his practice is personal injury cases, he also testified that he spent most of his time in criminal defense work and that he has had a number of homicide cases, four I believe in Connecticut.

Although he has had none in Massachusetts, he's been a member of the Massachusetts Bar since 1989. That was May 24th of 1989 and is a member of the Bar Advocate in Massachusetts which is the private side of commitment for public service elected to be assigned criminal cases in Massachusetts and has been assigned the time, approximately the time he was committed in May of 1989 he has the two criminal trials in Superior Court in Hampden County.

Attorney Williams testified and I accept his testimony as true that on the evening of November third, 1993 he went to the House of Corrections in Ludlow, Massachusetts **[*15]** where the defendant was detained and spoke to him about the circumstances of the case with the understanding that that interview would be followed up immediately by an interview with the District Attorney and two police officers from the Springfield Police Department.

At that time Attorney Williams advised the defendant that he could be responsible for the homicide even though he never pulled the trigger himself. That he could be responsible under the theory of joint venture and also a theory of felony murder and he testified. I accepted his testimony that the defendant understood or appeared to understand that he could be responsible for murder even though he himself did not pull the trigger.

The District Attorney and the police interviewed the defendant at Hampden County House of Corrections on the evening of November third, 1993 and prior to talking to him and that interview was in the presence of Attorney Williams in which they were seated on opposite sides of the table. That is, the police were on the opposite sides of the table, the defendant and Attorney Williams.

The defendant was advised again of his Miranda rights. Although he said at that time he was not advised if he **[*16]** could not afford a lawyer one be appointed for him. He had a lawyer with him. And I find that the defendant did again receive his Miranda Rights on that night. Although I'll find that I believe the defendant testified that on that night he was not told that if he could not afford a lawyer one would be made available to him.

But he was told that anything he said that could be used against him. I find it incredible that the District Attorney would not have taken a statement from him unless it was to have been taken with the understanding that it could have been used against him. I'm not familiar with the practices in Hampden County.

But I would be surprised that a District Attorney would be so foolish as to let someone give them a statement without the opportunity or with the opportunity not using that statement should the District Attorney not accept that person as a

cooperating witness. I don't believe that there is anyway to test the credibility of that kind of statement unless the defendant or the speaking defendant make such a statement without the full potential for his inculpatory use.

I would be surprised that the District Attorney would take a statement without telling defendant **[*17]**  that it could be used against him. That may happen but I would be surprised if it had. Two very well presented issues by trial counsel in this case. But I'm not going to analyze them in order, the order in which he did.

****

The defendant wanted to cooperate to obtain favorable treatment. There was a very rational basis for his wanting to do that. His cousin, Fred Shindholster, had been talking to the police and/or was at least approaching the police about making a statement to seek favorable treatment.

****

Be rap [sic] with respect to the question of ineffective assistance of counsel for the reasons I stated I find there was no ineffective assistance of counsel.

That the defense counsel, Mr. Williams did advise the defendant that the statement, any statement he made could be used against him and that his involvement in the case could warrant a conviction of first degree murder on the theory of joint venture or a theory of felony murder. But even if the defendant's accounts were true which again I do not accept his account of the relationship that he had with counsel.

****

I do find that Mr. Williams advised the defendant of the consequences of making a statement **[*18]**  to the police; that there was advice given and understood; that the defendant could be convicted of first degree murder on the felony murder theory as well as on the joint venture theory.

And I also find that that the defendant in this case himself initiated repetitively with Mr. Williams his desire to cooperate with the police to try to cut the best deal he could. I find that was a very wise and intelligent decision in fact because this defendant personally has a lot of things going for him.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 This court sets forth the findings of the trial judge in lengthy detail for one reason. Counsel for petitioner, at page 16 of his Memorandum of Law (# 22), reports, as fact "The heart of the motion judge's oral findings[.]"

That heading is, at once, wrong and outright misleading, because immediately following that introductory heading is but a portion of the findings made by the trial judge, and that portion excerpted by counsel for petitioner ignores the true findings of the trial judge as reported in the transcript.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*19]**

After the denial of the motion to suppress, trial commenced. The Commonwealth did not introduce, or attempt to introduce, that statement at trial. And no portion of that statement was used in impeachment of the petitioner.

On direct appeal to the Massachusetts Supreme Judicial Court, this time with new counsel again, appellate counsel contended that the facts set forth above indicated that petitioner had received ineffective assistance of counsel before trial, indeed, before indictment, n8 and that, accordingly, the trial judge erred.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n8 Petitioner gave his statement to the police on November 3, 1993. The first formal charge, *i.e.,* the murder indictment, was not returned until November 8, 1993.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In responding to that, the Massachusetts Supreme Judicial Court concluded:

> The motion judge here, who was also the trial judge, conducted a hearing at which the defendant, the defendant's mother, and Mr. Williams gave testimony. At the conclusion of the hearing, the judge made oral findings. He found that, when **[*20]**  the defendant was en route to the police station with his mother and Mr. Williams, Mr. Williams advised the defendant not to make any statements to the police. Further, he found that the defendant wanted to cooperate with the prosecutor, and the defendant had initiated the subject himself. In addition, the judge found that Mr. Williams met with the defendant immediately before the defendant gave his statement to the police and "advised the defendant that he could be responsible for the homicide even though he never pulled the trigger himself."

> The judge also found that the defendant did not receive any

"bad" or incorrect advice. The judge made a specific finding that there was no ineffective assistance of counsel. Finally, he stated, "I ... find that [Mr.] Williams advised the defendant of the consequences of making a statement to the police; that there was advice given and understood; that the defendant could be convicted of first degree murder on the felony murder theory as well as on the joint venture theory."

In making these findings, the judge, acting within his discretion, credited Mr. Williams' testimony over that of the defendant. *See Commonwealth v. Scott,* 430 Mass. 351, 355, 718 N.E.2d 1248 (1999) **[*21]** ("The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court" [citations omitted]). We accept these findings because they are supported by the record. *Commonwealth v. Yesilciman, supra* 406 Mass. 736 at 743, 550 N.E.2d 378.

These findings support the conclusion that the defendant was not denied effective assistance of counsel. *Contrast Commonwealth v. Chetwynde,* 31 Mass.App.Ct. 8, 12-14, 574 N.E.2d 407 (1991) (record did not support judge's finding that defendant received effective assistance where defendant weighed counsel's alleged misrepresentations in deciding to plead guilty); *Commonwealth v. Moreau,* 30 Mass.App.Ct. 677, 682, 572 N.E.2d 1382 (1991), *cert. denied,* 502 U.S. 1049,112 S. Ct. 915, 116 L. Ed. 2d 815 (1992) (record did not support judge's conclusions that attorney's advice to confess did not constitute ineffective assistance of counsel). The motion to suppress was correctly denied.

In this court, new counsel for petitioner, armed with the twenty-twenty hindsight of a Monday morning quarterback, says that **[*22]** Mr. Williams, in advising petitioner to made a statement to the police, was not a lawyer worth his salt. And he says, the trial judge, in not recognizing that fact, also was short on the law. And, finally he says that the Massachusetts Supreme Judicial Court, in affirming his convictions *vis a vis* that claim, misconstrued established Sixth Amendment jurisprudence as it relates to the effective assistance of counsel.

On this, however, petitioner falls far short of stating any federal claim warranting federal habeas relief. And for two reasons. First, the Massachusetts Supreme Judicial Court, in rejecting his claim, did not rule contrary to Supreme Court precedent, and did not unreasonably apply federal precedent. Secondly, and more importantly, even if the Massachusetts Supreme Judicial Court erred in its assessment that Mr. Williams provided petitioner with effective assistance of counsel, it matters not in terms of stating a claim for habeas relief.

A. Availability of Habeas Relief even Assuming that the Supreme Judicial Court was wrong in its assessment of the Sixth Amendment claim

Taking the last point first, petitioner, for all that he does say, does not indicate the **[*23]** nature of his constitutional claim. He says that Mr. Williams was ineffective in advising petitioner to cooperate with the police and give a statement. Assuming that to be true, however, that is quite beside the point. Before trial, court-appointed counsel moved to suppress petitioner's statement, nothing more, and nothing less. That motion was denied. But even if it should have been allowed, petitioner can show no constitutional injury in terms of the trial. Although the trial judge did not suppress the statement, it was not offered into evidence by the Commonwealth at trial.

Although petitioner says in his Memorandum of Law (# 22, pp. 15-16), that "...the prosecutor used [the statement] to cross examine [petitioner] when he testified[,]" that is simply not supported by the record. It is not surprising that petitioner does not refer to any portion of the transcript in making that assertion, for the simple reason that it is not true. On two occasions, the transcript reflects questions by the prosecutor as to whether petitioner said something or the other to the police - *i.e.,* pp. 196 and 238 of the Trial Transcript for November 17, 1994. n9 On neither occasion did **[*24]** the prosecutor show petitioner any statement allegedly made by him, and, on each occasion, petitioner denied that he had made the statement - a denial which remained unchallenged. The prosecutor did not use the statement for impeachment. n10 And even if he had, petitioner has failed to show any authority whatsoever, federal or otherwise, which suggests that the use of a statement made by a defendant after having receiving "bad" advice by a retained lawyer, when that statement is used for impeachment purposes only, is unconstitutional and warrants habeas relief. In a sense, a claim that a putative defendant made an incriminating statement on the advice of counsel is, for all practicable purposes, no different than a claim that a putative defendant made a statement without counsel and/or without being advised of his or her right to counsel - *i.e,* a claim that a statement was taken in violation of *Miranda.* The latter, it seems abundantly clear, is, given state action, more offensive to the Constitution than the former. And yet *HN6* the use of a statement taken in violation of *Miranda* is clearly admissible for impeachment purposes without offending the Fifth and Sixth **[*25]** Amendments of the United States Constitution, *Oregon v. Hass, 420 U.S. 714, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975),* unless the statement was "involuntary" in the traditional and accepted meaning of the term, "involuntary". *Mincey v. Arizona, 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408 (1978).* And that is clearly not the case here, that is to say, in the trial court, counsel for petitioner never seriously contended - if he contended at all - that petitioner's statement was "involuntary" within the meaning of *Mincey* and other cases.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n9 Located in Volume II of the Further Supplemental Answer (# 21).

n10 In his Memorandum of Law in this court (# 22), petitioner clearly misrepresents the record. He says (*Id. at p. 20,* note 7):

> This characterization is misleading. While that statement was made in Smiley's opening brief, SA doc.6, p.36, a more complete picture was presented in his Reply Brief:
>
>> "The Commonwealth properly concedes that the statement was used to cross examine Smiley. Com. Br. 19. The prosecutor argued in summation that 'Mr. Smiley himself early in the case admitted to the police he had been involved in this venture. At the very least there was a case against him of first degree murder," TTr.V:32, and "I asked him about his statement to the police where it was different in the statement to the police ...." TTr.V:40-4.1. SA, doc. 8, pp.5-6."

This statement is, at best, a reflection of a total lack of familiarity with the record (which, in and of itself is unforgivable, where the representation is made in positive terms), or, at worst, an outright falsification of the record. The Commonwealth did not "concede" that the statement was used to cross-examine petitioner. In its Brief (at page 19, as indicated by petitioner), the Commonwealth simply said: "Even if the prosecutor used the defendant's oral statement to impeach his testimony ... the statement was neither shown to the defendant nor admitted into evidence ....". That is hardly a concession that the statement was used to cross-examine petitioner.

And petitioner's reference to the closing argument is more than disingenuous. To be sure, the prosecutor said, in his closing argument: "You heard that Mr. Smiley himself early in the case admitted to the police he had been involved in this venture." Of course the jury had heard that - for the simple reason that petitioner's counsel, moments before in his closing argument, said:

> A lawyer was arranged for him. He went to the police station, he went to the courthouse, and that night he made a statement to the police. He told the police everything that he told you on the witness stand yesterday right away. (Emphasis added).

And not only because of that. It was counsel for the defendant who first introduced the testimony of petitioner himself that he had given a statement to the police. Trial Transcript for November 17, 1994, in Volume II of the Further Supplemental Answer (# 21), at pp. 179-183. And, of course, this is well

before the cross-examination referred to by petitioner in which petitioner claims - wrongly so - that the statement was used to impeach the petitioner.

And the reference to pages 40-41 of the prosecutor's closing argument augers no better, since there was nothing said in that portion of the argument, an argument made after counsel for petitioner had already told the jury that petitioner had made a statement to the police, which indicates what petitioner said to the police, if anything.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*26]**

In *Mincey,* the Court found the following facts, *inter alia,* which rendered the confession involuntary, to wit (*Id.* at 396-401):

> Mincey was brought to the hospital after the shooting and taken immediately to the emergency room where he was examined and treated. He had sustained a wound in his hip, resulting in damage to the sciatic nerve and partial paralysis of his right leg. Tubes were inserted into his throat to help him breathe, and through his nose into his stomach to keep him from vomiting; a catheter was inserted into his bladder. He received various drugs, and a device was attached to his arm so that he could be fed intravenously. He was then taken to the intensive care unit.

> At about eight o'clock that evening, Detective Hust of the Tucson Police Department came to the intensive care unit to interrogate him. Mincey was unable to talk because of the tube in his mouth, and so he responded to Detective Hust's questions by writing answers on pieces of paper provided by the hospital. Hust told Mincey he was under arrest for the murder of a police officer, gave him the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, **[\*27]** and began to ask questions about the events that had taken place in Mincey's apartment a few hours earlier. Although Mincey asked repeatedly that the interrogation stop until he could get a lawyer, Hust continued to question him until almost midnight. (Footnote omitted).

> ****

> It is hard to imagine a situation less conducive to the exercise of "a rational intellect and a free will" than Mincey's. He had been seriously wounded just a few hours earlier, and had arrived at the hospital "depressed almost to the point of coma," according to his attending physician. Although he had received some treatment, his condition at the time of Hust's interrogation was still sufficiently serious that he was in the intensive care unit. He complained to Hust that the pain in his leg was "unbearable." He was evidently confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation, since some of his written answers were on their face not entirely coherent. Finally, while Mincey was being

questioned he was lying on his back on a hospital bed, encumbered by tubes, needles, and breathing apparatus. He was, in short, "at the complete mercy" of Detective **[*28]** Hust, unable to escape or resist the thrust of Hust's interrogation. (Footnotes omitted).

\*\*\*\*

In this debilitated and helpless condition, Mincey clearly expressed his wish not to be interrogated. As soon as Hust's questions turned to the details of the afternoon's events, Mincey wrote: "This is all I can say without a lawyer." Hust nonetheless continued to question him, and a nurse who was present suggested it would be best if Mincey answered. Mincey gave unresponsive or uninformative answers to several more questions, and then said again that he did not want to talk without a lawyer. Hust ignored that request and another made immediately thereafter. Indeed, throughout the interrogation Mincey vainly asked Hust to desist. Moreover, he complained several times that he was confused or unable to think clearly, or that he could answer more accurately the next day. But despite Mincey's entreaties to be let alone, Hust ceased the interrogation only during intervals when Mincey lost consciousness or received medical treatment, and after each such interruption returned relentlessly to his task. The statements at issue were thus the result of virtually continuous questioning of a seriously **[*29]** and painfully wounded man on the edge of consciousness.

The holding in *Mincey,* of course, squares with First Circuit precedent. In *Veilleux v. Perschau,* 101 F.3d 1 (1st Cir. 1996), that Court discussed the question of voluntariness of a statement as follows (*Id.* at 2-3):

In appraising Perschau's conduct, our focus of attention is on the self-incrimination claim and the underlying issue of whether the confession was "involuntary."

\*\*\*\*

*HN7* The "involuntariness" standard, at least where there is no physical abuse, generally depends on whether under the totality of the circumstances the defendant's will was overborne. *See United States v. Jackson,* 918 F.2d 236, 242 (1st Cir.1990). In this case, some might think that Perschau had applied relatively little pressure, that his goal was admirable, and that the legal advice that he gave to Veilleux was sound and amply confirmed by the district court's grant of the later motion to suppress. The absence of a lawyer does not itself automatically render a statement involuntary. *See Quarles,* 467 U.S. at 652, 658-59, 104 S. Ct. at 2632-33.

On the other hand, **[*30]** courts have in various circumstances

found to be "involuntary" certain statements made by
defendants in police custody in response to fairly modest police
pressure or following advice or promises that the court believed
to be unfair or misleading. (Emphasis added).

There is absolutely no evidence whatsoever which suggests that petitioner's
will was overborne. After all, it was petitioner, not counsel, who, knowing that
his cousin was already cooperating, said that he wanted to cooperate with the
District Attorney. There is no evidence that anyone compelled him or induced
him by false pretenses to give the statement which he did, n11 and there was
no evidence that the statement was "involuntary" in any sense, n12 much less
in the "classic" sense of that word. n13 And because of this, petitioner has
proffered no authority, much less established law, which suggests that a
statement allegedly given on the basis of bad advice by his attorney should be
treated any differently from a statement taken in violation of *Miranda,* and
which is otherwise admissible for purposes of impeachment under the clear
holding in *Oregon v. Hass, supra.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Counsel before this court seemingly allows that petitioner was misled -
*I.e.,* because Mr. Williams advised petitioner not to make a written statement -
he was misled into believing that the authorities could not use the statement
against him. That is, however, pure and outright fiction, since petitioner readily
admitted, at the motion to suppress hearing, that he did understand that
anything he said to the authorities could be used against him. Further
Supplemental Answer (# 20), Transcript of Motion to Suppress, p. 79, lines 5-
9. **[*31]**

n12 In this case, trial counsel for petitioner never contended that the
statement of petitioner was involuntary in the sense of *Mincey* and *Veilleux*
that is, that the statement was compelled by overbearing his will, or by fraud
and deception. To be sure, before the trial judge, trial counsel used, here and
there, the word involuntary. But that was in the context of Miranda - a non-
issue, then and now. That is to say, counsel for petitioner, in using the word
involuntary, put it in context as follows: "The defendant raises the issue, which
we have raised in this case, the burden is on the Commonwealth to prove
beyond a reasonable doubt that *Miranda* was voluntarily waived." Further
Supplemental Answer (# 20), Transcript of Argument on Motion to Suppress
held on November 10, 1994, at p. 16. (Emphasis added).

That, of course, confuses the "voluntariness" component with "intelligent and
understanding" components of the *Miranda* inquiry. Indeed, petitioner's view of
the meaning of the voluntary component of the *Miranda* calculi is off the mark.
For one thing, it renders the "intelligent and understanding" components of the
teachings of *Miranda* and its considerable progeny superfluous. But more
importantly, under petitioner's casual suggestion that a waiver of *Miranda*
cannot be voluntary unless a defendant understands all of the nooks and

crannies of the criminal law, *e.g.,* the difference between murder in the first degree and murder in the second degree, etc., no statement made by a defendant (save, perhaps, a lawyer who is fully conversant with the criminal law - and even then, no doubt, it would be a fool he had for his client) voluntarily and intelligently, and without duress, waiving counsel, would ever be admissible at trial.

Clearly, nothing in *Miranda,* or any other case, suggests that the word "involuntary" in the *Miranda* tripartite inquiry is but another buzzword for the word, "understandingly" or "intelligently." **[*32]**

n13 In *United States v. Faulkingham,* 295 F.3d 85 (1st Cir. 2003), the Court again referred to the term involuntary in the more traditional - the classic - manner (*Id.* at 93):

> Further, the defendant's own statements were not coerced and were not unreliable in the classic sense of involuntariness. (Emphasis added).

And, indeed, that is precisely the view taken by the trial judge in this case, where the trial judge, who heard the testimony and was in the best position to resolve credibility issues, observed, *inter alia* (Further Supplemental Answer (# 20), Volume I, Transcript of Argument on Motion to Suppress held on November 10, 1994, at pp. 37-38):

> The cases are vicariously [sic] statements. Such as did the defendant have a free and unconfined choice or it was the defendant's choice freely self determined or was the choice to make the statement the product of a rational intellect and a free will or was the defendant's will to recite over borne.
>
> ****
>
> I find that he, that he did not experience any aggressive or overbearing interrogation by the police. I find that the statement was made at the request of the defendant.
>
> ****
>
> There was absolutely nothing during the course of that interrogation that would sound as overbearing or aggressive.
>
> ****
>
> Totally devoid of any circumstance that would be overbearing or totally devoid of any circumstances that would deprive him or impact his ability or will to recite the interrogation. (Emphasis added)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*33]**

Petitioner also says (Memorandum of Law (# 22), p. 37) that his statement was displayed to Shinholster, his cousin and co-defendant who testified against him at trial, and that, accordingly, his statement was "used" in that fashion as well. But, putting to one side the speculative musings of current counsel, there is not a single, solitary fact which suggests that Shinholster's testimony was based on petitioner's statement in any respect. n14 Counsel for petitioner at trial, who was in a far better position to know than current counsel, never suggested that Shinholster "used" the statement in any manner in connection with his testimony against petitioner at trial. Trial counsel asked the question of Shinholster during cross-examination, and Shinholster simply said that, among other things, the statement of petitioner was displayed to him. He did not say that there was anything in that statement which formulated or shaped his testimony at trial. He did not seek any relief *vis a vis* the testimony of Shinholster at trial. The record is devoid of any such facts or facts which would even permit an inference that Shinholster [and, derivatively, the Commonwealth] "used" petitioner's **[\*34]** statement in the Commonwealth's case against him. And even if Shinholster did use petitioner's statement in some manner in shaping his testimony at trial, once again, current counsel for petitioner has not suggested a single, solitary authority which says, or even pretends to say, that the "use" of a statement in this manner, even if taken in violation of *Miranda,* is unconstitutional. There are those Supreme Court justices who read Supreme Court precedent as concluding that that Court has already said that a violation of *Miranda* does not warrant a suppression of the "fruits" of the *Miranda* violation. *Dickerson v. United States,* 530 U.S. 428, 451, 147 L. Ed. 2d 405, 120 S. Ct. 2326 (2000)(dissenting opinion of Justice Scalia, joined by Justice Thomas). n15 Although the First Circuit has taken a more cautious approach to the issue, it has concluded that HN8 an unintentional or negligent violation of *Miranda* (and petitioner in this case has never contended that Mr. Williams intentionally misled petitioner about anything) does not warrant suppression of the fruits of the *Miranda* violation. *United States v. Faulkingham,* 295 F.3d 85 (1st Cir. 2002). n16 **[\*35]**

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 On this, current counsel says (Memorandum of Law (# 22, p. 38)):

> Shinholster testified that he had not cooperated with the prosecution at first, and had told his lawyer that he was willing to be a cooperating witness only "after certain statements were made out, yes." TTr.111:208. He admitted that, before he made his cooperating statement, he reviewed Smiley's statement, both of Rasheem Reid's statements, and the statements of June Johnson and Eric Williams [the two surviving victims]. Id:209-11. Likewise, he knew that most of the projectiles recovered were from a .380 automatic [Hardy's weapon], but that one was from a .38 [Smiley's weapon]" and that the prosecution had no evidence of who fired the .38 but wanted to know. Id:214.

Shinholster had also spent time together with Calvashon Johnson in the Superior Court lockup discussing the case. Id:218. Thus, Smiley's statement was used to assist Shinholster in formulating his "devastating" account painting Smiley as a planner and a shooter ... (Emphasis added).

The emphasized portion above, of course, simply does not follow from the "facts" of the record. It is something made of whole cloth by current counsel for petitioner. For even if Shinholster "reviewed" petitioner's statement, it does not follow like (as apparently suggested by new counsel) night the day that Shinholster "formulated" his testimony based on petitioner's testimony. If counsel for petitioner at trial thought it to be the case (and he apparently did not, since nothing was brought to the attention of the trial judge on this score), he could have pursued the point by questions. The trial court is the place to make a record. Trial counsel did not. Spinning unfounded conclusions on appeal do not substitute for making a record at trial. **[*36]**

n15 "*Michigan v. Tucker,* 417 U.S. 433, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974),* an opinion for the Court written by then-Justice Rehnquist, rejected the true-to-Marbury, failure-to-warn-as-constitutional-violation interpretation of *Miranda.* It held that exclusion of the "fruits" of a *Miranda* violation--the statement of a witness whose identity the defendant had revealed while in custody-was not required. (Emphasis added).

n16 There that Court held in pertinent part (*Id.* at 93):

But deterrence weighs less heavily on the Fifth Amendment legal scale, which balances the value of the derivative evidence to the truth seeking process against the protection of the defendant's Fifth Amendment rights, once the defendant's own statements are suppressed. The balance, to the extent the Supreme Court's case law may permit balancing, necessarily involves weighing the reliability of the unwarned derivative evidence against the need for deterrence. Here, the derivative evidence is itself reliable. Further, the defendant's own statements were not coerced and were not unreliable in the classic sense of involuntariness. *See Dickerson,* 530 U.S. at 432-33, 120 S.Ct . 2326 (stating that before *Miranda,* "the law governing the admission of confessions" was concerned with the unreliability of coerced confessions); *Oregon v. Elstad,* 470 U.S. 298 at 304, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (same). Where, as here, negligence is the reason that the police failed to give a *Miranda* warning, the role of deterrence is weaker than in a case, such as *Byram,* where the apparent reason the police failed to give a warning was their intention to manipulate the defendant into giving them information.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*37]**

In short, even assuming that new counsel for petitioner is right on the proper interpretation of the Sixth Amendment, and (as he suggests) the

Massachusetts Supreme Judicial Court got it all wrong, that is, in terms of habeas relief quite beside the point. For, in this case, petitioner has chosen the wrong sound bite. He echos the words of Justice Jackson - *i.e.,* "any lawyer worth his salt will tell the suspect in no uncertain terms to make no statement to police under any circumstances." *Watts v. Indiana,* 338 U.S. 49, 59, 93 L. Ed. 1801, 69 S. Ct. 1347 (1949)(Mem). n17 We prefer that of the less prestigious in legal circles, but otherwise just as observant in another context, the late Chick Hearn, n18 to wit: "No harm, no foul". And that is this case - no harm, no foul. Prior to trial, petitioner moved to suppress the introduction of his statement at trial. Although he lost that skirmish before trial, he won the battle and the war at trial in the sense that the Commonwealth did not offer the statement at trial. He accordingly received, albeit for different reasons, all that he asked for. There is not a scintilla of evidence indicating that the Commonwealth used his statement **[*38]** for impeachment purposes, or used the statement to "formulate" and shape the testimony of his cousin, Shinholster, at trial. *HN9* A federal habeas court sits to correct errors which affects substantial rights. Although petitioner's current discourse on the shape and breadth of the Sixth Amendment right to counsel might make interesting copy for academicians to while their days away, or fodder for the moot courtrooms of the nation, it makes no difference here. As one court puts it succinctly (*United States v. Minjares-Alvarez,* 264 F.3d 980, 984 (10th Cir. 2001)):

> The Supreme Court recently held that the advisements first required by *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), arise out of the constitution, and that a defendant's post-arrest statements must therefore be excluded unless the defendant was first notified of his *Miranda* rights. *See Dickerson v. United States,* 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000). Since Minjares did not receive any advisement of his rights at the scene of his arrest, those statements he made prior to being transported to the Border Patrol Station were **[*39]** inadmissible pursuant to *Dickerson* and *Miranda.* None of these statements, however, were submitted to the jury. Therefore whatever deprivation of rights Minjares may have suffered at that point did not affect his trial. (Emphasis added).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n17 And even then, Justice Jackson made that statement in a totally different set of circumstances. He prefaced that remark with the observation (*Id.* at 58):

> In each case police were confronted with one or more brutal

murders which the authorities were under the highest duty to
solve. Each of these murders was unwitnessed, and the only
positive knowledge on which a solution could be based was
possessed by the killer. (Emphasis added).

In this case, of course, it was and is quite different. The murder was witnessed
by others. And one of those others, petitioner's own cousin, had already
started to cooperate with the authorities. We do not read Mr. Justice Jackson
to mean that, under any and all circumstances, a lawyer worth his or her salt
will never, ever, tell his or her client to own up and cooperate - in part by
stating his or her involvement in the crime. That would simply blink reality,
since, as every practicing lawyer before this court well knows, there are
occasions when it is best for a client to cooperate to the fullest extent, and
where a wooden suggestion by defense counsel not to cooperate would, in
itself, be ineffective assistance of counsel. **[*40]**

n18 The Los Angeles Lakers broadcaster Chick Hearn who was legendary for
this and other phrases of the times.

For those interested, the reader is invited to peruse:

http://espn.go.com/classic/obit/s/2002/0805/1414492.html

while that page remains current.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

That principle applies likewise to this case. Even if, as petitioner now suggests,
the Massachusetts Supreme Court Judicial Court got it all wrong, that is beside
the point. As was the case in _Minjares-Alvarez,_ petitioner's statement was
never "submitted to the jury." It is, at bottom, a non-issue in terms of habeas
relief, and Ground One, for this reason, fails to state a claim upon which relief
may be granted.

B. The State Court Opinion

And, in any event, petitioner cannot show that the decision of the
Massachusetts Supreme Judicial Court, in affirming his convictions
notwithstanding his Sixth Amendment claim, was contrary to Supreme Court
precedent, or constituted an objectively unreasonable application of
established federal law. Once again, for all that petitioner has said, he has not
cited one Supreme Court case which says,  **[*41]**  or even intimates, that a
statement made by a defendant based on "bad advice" n19 by defense
counsel, _sans_ any misconduct on the part of the prosecution or police, n20 is
inadmissible at trial, be it as direct evidence, or for impeachment, or that that
statement could not be used by the prosecution in preparing another witness.
It is not enough simply to say that, as a general principle, the Sixth
Amendment demands effective assistance of counsel, since, "Section

2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision.' *Williams v. Taylor,* 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)." *Lockyer v. Andrade, supra,* at 1172-1173 (Emphasis added). n21 And to the extent that petitioner contends that the decision of the Massachusetts Supreme Judicial Court, in affirming his convictions notwithstanding his Sixth Amendment claim, constituted an objectively unreasonable application of established federal law, petitioner, once again, fails to cite a single, solitary case in which a federal court, in the context of a habeas case or otherwise, **[*42]** has held, or even suggested that, a statement made by a defendant based on "bad advice" by defense counsel, *sans* any misconduct on the part of the prosecution or police, is inadmissible at trial, be it as direct evidence, or for impeachment, or that that statement could not be used by the prosecution in preparing another witness. There was and is no established law, then or now, which says as much. It is not for the federal habeas court to forge the new constitutional doctrine urged by the petitioner. n22

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 Of course, that assumes that petitioner was given "bad" advice. The trial judge concluded otherwise, as noted in the opinion of the Massachusetts Supreme Judicial Court. Although petitioner testified to many things at the motion to suppress hearing, and new counsel for petitioner faults the trial judge's findings because his findings did not dot each line and because his findings did not touch upon each and everything that petitioner said, the only fair reading of the findings of the trial judge on this score - findings which are spread upon the record at Further Supplemental Answer (# 20), Volume I, Transcript of Argument on Motion to Suppress held on November 10, 1994, at pp. 31-44, is that the trial judge, to the extent that there was any significant conflict of the testimony, credited the testimony of Mr. Williams over that of petitioner. *E.g.,* "Attorney Williams testified and I accept his testimony as true ...", p. 33, "I accepted his [Williams'] testimony ...", p. 34, **[*43]**

n20 And trial counsel specifically eschewed any suggestion there was any such misconduct.

n21 Indeed, it is not even clear that - apart from the interplay of the Fifth and Sixth Amendments as indicated in *Miranda* - the right to counsel - in the context of ineffective assistance of counsel claims - attached at the time the statement was made. To be sure, there is general language to the effect that that right attaches" ... at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972). But, insofar as this court can determine, the sort of arraignment referred to in *Kirby* and similar cases, by virtue of the precise holdings in those cases based upon stated facts, differ from the sort of arraignment in this case. In those cases referring to "arraignment", it was the formal arraignment after the formal charge - *i.e.,* the taking of the formal plea

after the return of the indictment, information, or other formal charging document. *E.g., Coleman v. Alabama,* 399 U.S. 1, 26 L. Ed. 2d 387, 90 S. Ct. 1999 (1970). In this case, the term arraignment, is used in a more colloquial sense. On November 3, 1993, when petitioner surrendered, he was brought before the court (we assume, although we are not told) on the basis of a criminal complaint charging murder. A criminal complaint is not the formal charging document since, absent waiver, a murder charge must be initiated by grand jury indictment. What petitioner refers to as his arraignment on November 3, 1992, was the functional equivalent of his first appearance for purposes of bail. The murder indictment, the first of the indictments to be returned, was returned some five days later on November 8, 1993 And his formal arraignment on that indictment was on November 12, 1993.

Indeed, in *Kirby,* the court gave some definition to what had previously been said in a general sense *vis a vis* the attachment of the Sixth Amendment right to counsel, to wit (*Id.* at 689-690):

> The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. (Emphasis added)

And there are cases - *Kirby* itself for openers - which lend support to the notion that matters occurring pre-indictment do not necessarily implicate the Sixth Amendment right to counsel, effective or otherwise, *I.e., Kirby,* and *supra,* holding that notwithstanding the previous *Wade* and *Gilbert [United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), and *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967)] line of cases, those holdings were limited to post-indictment, and not pre-indictment lineups and the like.

All of that notwithstanding, however, this court assumes, without finally deciding, that the Sixth Amendment right to counsel, against which an ineffective assistance of counsel claim can be measured, attached on November 3, 1993, on the occasion of petitioner's first appearance before the court. **[*44]**

n22 That much is implicit in the holdings in *Williams v. Taylor, supra* and *Lockyer v. Andrade, supra.* [HN10] If a habeas court is limited to looking at federal precedent in existence at the time the state court decision is issued, it

follows *a fortiorari* that the habeas court is not the court to forge new constitutional rules and principles.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

For all of these reasons, Ground One fails to state a claim upon which relief may be granted.

VI. Ground Two - The Armed Assault in a Dwelling Instructions

Claiming that the armed assault instructions did not require the jury to find intent to commit a felony independent of the armed assault, and that the evidence was constitutionally insufficient on that charge, n23 petitioner, without setting forth the entire instructions of the trial court, n24 in a rather rambling and disjointed approach, n25 generally criticized the instructions of the trial judge relating to the crime of entering a dwelling house while being armed and committing an assault with intent to commit a felony. n26 In response to all that petitioner **[*45]**  said before that Court, the Massachusetts Supreme Judicial Court concluded:

> *Instruction regarding armed assault in a dwelling.* The defendant next argues that the instruction regarding armed assault in a dwelling did not require the jury to find both armed assault and intent to commit a felony independent of the assault which resulted in the victim's death. The defendant further argues that all of the assaults merged with the initial assault on Edwards prior to entering his dwelling and therefore there was "no evidence of an armed assault on an occupant of [Edwards' home] independent of the effort to rob Edwards." Thus, he concludes, there was no support for a finding of felony-murder based on armed assault in a dwelling. These arguments have no merit.

> Contrary to the defendant's claim, the judge clearly instructed the jurors regarding independence. He instructed that the felony-murder rule applies if the felony in question was separate from the act necessary to commit the unlawful killing. The judge further instructed the jury to "look to see if there was a separate felony which occurred aside from the acts of violence which led to the death of Oliver Edwards." There was **[*46]**  no error

> In addition, there is no support for the defendant's claim that all the assaults in the dwelling merged with the initial assault on Edwards designed to gain entry into his dwelling. The defendant's contention is plainly wrong. *Commonwealth v. Christian,* 430 Mass. 552, 556, 722 N.E.2d 416 (2000) ("it is the intent to do that conduct (here stealing from [one of the victims]) that serves as the substitute for the malice requirement of murder"). Assaults do not merge simply because

the assaults serve to further the goal of the defendant's felonious plan.


- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -


n23 That portion was captioned:

THE ARMED ASSAULT INSTRUCTIONS DID NOT REQUIRE THE JURY TO FIND INTENT TO COMMIT A FELONY INDEPENDENT OF THE ARMED ASSAULT AND THE EVIDENCE WAS CONSTITUTIONALLY INSUFFICIENT TO SUPPORT SUCH A FINDING


n24 Inasmuch as petitioner did not excerpt the allegedly offending instructions in his brief, save the small self-serving excerpt as shown in note 25, *infra,* to wit "The assault on the occupant of a dwelling must involve in this case the felony (armed robbery) itself.[,] the Massachusetts Supreme Judicial Court might well have concluded that that which petitioner held forth was all that was said on this matter. But, of course, the trial judge said more, and petitioner, by omitting that which preceded his excerpt, and that which followed his excerpt, says far too little. In pertinent part, the trial judge, in explaining the "intent to commit a felony" component of the statute, instructed:


The felony need not actually be committed. It is enough that the Commonwealth prove beyond a reasonable doubt that at the time the Defendant allegedly entered the dwelling, he was armed and intended to commit a felony while inside, and assaulted somebody inside while still having the intent. The felony need not involve the person assaulted, but it may. Let me give you an example. The assault on the occupant of a dwelling must involve in this case the felony itself. Now the felony that the Commonwealth is alleging is, that the Defendant Tabue Smiley intended to commit -- again, he doesn't have to have actually committed it, but they have to prove he intended to commit the felony of armed robbery while inside the dwelling.


**[*47]**

n25 All that new counsel for petitioner said on this matter in his brief is as follows:

Conviction of armed assault in a dwelling requires proof of an assault within the dwelling with the intent of committing a felony which is factually distinct from the assault. *Commonwealth v. Smith,* 42 Mass App. Ct. 906, 907, 674 N.E.2d 1096 (1997); *Commonwealth v. Squires,* 28 Mass App Ct 911, 913, 546 N.E.2d 881 (1989); *Commonwealth v. Donoghue,* 23 Mass App Ct 103, 112-113, 499 N.E.2d 832 (1986). Both the armed assault and the intent to commit a felony independent of the initial assault must be proved. Smith, supra. The jury instructions did not mention this essential element of the Commonwealth's proof. Instead, the judge instructed: "The assault on the occupant of a dwelling must involve in this case the felony (armed robbery) itself." TTr.V:84 Defense counsel did not object to this omission and misstatement.

The judge's instruction merging armed assault and the intended felony of armed robbery accurately reflect the state of the evidence. The prosecution theory was that the armed assault and the armed robbery converged in a continuous sequence of events, the sole object of which was to rob Oliver Edwards. The evidence was that Edwards was confronted at gun point on the street and taken at gun point into his home for the purpose of robbing him Hardy murdered Edwards during the course of this kidnap-robbery, after Smiley had withdrawn and fled, taking Shinholster and another with him It was sufficiently unclear from the evidence whether property had been taken that the jury asked whether a completed robbery was necessary. VI:7. The judge instructed that an attempted armed robbery was sufficient. VI:8-10.

The failure to instruct the jury on an essential element of the crime creates a risk of a miscarriage of justice. *Commonwealth v. Gelpi,* 416 Mass 729, 730-731, 625 N.E.2d 543(1994). Defense counsel's failure to request this instruction on an essential element of the crime was ineffective. *Id.*

There was no evidence of an armed assault on an occupant of the dwelling independent of the efforts to rob Edwards. The sole purpose of the assaults on Johnson, Edwards and Williams was to facilitate the robbery of Edwards. Thus the evidence was insufficient to support the jury's verdict on armed assault in a dwelling, and the jury was not instructed on the Commonwealth's burden of proving this element beyond a reasonable doubt.

Defense counsel moved for a required finding of not guilty at the close of the Commonwealth's evidence. TTr.IV:45-48. Smiley is entitled to a required finding of not guilty on the armed assault

in a dwellingindictment, and on the murder indictment to the extent it is based on armed assault in a dwelling *Jackson v. Virginia,* 443 U.S. 307, 315-317, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979): *Commonwealth v. Latimore,* 387 Mass. 671, 443 N.E.2d 386 (1979)

**[\*48]**

n26 That offense is defined in the provisions of M.G.L c. 265, § 18A That statute provides:

§ 18A. Dangerous weapon; assault in dwelling house, punishment

> Whoever, being armed with a dangerous weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for life, or for a term of not less than ten years. No person imprisoned under this paragraph shall be eligible for parole in less than five years.

> Whoever, being armed with a dangerous weapon defined as a firearm, shotgun, rifle or assault weapon, enters a dwelling house and while therein assaults another with intent to commit a felony shall be punished by imprisonment in the state prison for a term of not less than ten years. Such person shall not be eligible for parole prior to the expiration of ten years.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Ground Two, as set forth in the petition, n27 hardly fails to state a claim for federal habeas corpus relief. To the extent that petitioner contends that the Massachusetts Supreme Judicial Court misconstrued the elements of the crime defined **[\*49]** under M.G.L. c. 265, § 18, that Court is the sole and exclusive arbiter of that question. *E.g., Estelle v. McGuire,* 502 U.S. 62, 67-68, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 111 L. Ed. 2d 606, 110 S. Ct. 3092 (1990); *Adelson v. DiPaola,* 131 F.3d 259, 262 n. 3 (1st Cir. 1997); *Hamm v. Latessa,* 72 F.3d 947 (1st Cir. 1995).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n27 The entirety of Ground Two as set forth in the petition is:

GROUND TWO: The jury instructions did not require the jury to find each

essential element of the crime of armed assault in a dwelling. Because this was a predicate crime to felony murder, the instructions also did not require the jury to find each essential element of murder. (Emphasis added).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Petitioner's attempt to cast this into a constitutional setting n28 falters even more. n29 In his brief before the Massachusetts Supreme Judicial Court, petitioner did not advance a single argument suggesting that the trial judge's instruction on the offense **[*50]** of entering a dwelling while armed and committing an assault with intent to commit a felony was unconstitutional in any respect. Each and every authority cited by the petitioner before that court was a state case save one. And the one exception, *Jackson* v. *Virginia,* 443 U.S. 307, 315-317, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), was for a completely different point - *i.e.,* that the evidence was insufficient to convict on that charge. In seeking relief *vis a vis* these instructions, all that petitioner said, by the terms of the caption of his argument was that: "The armed assault instructions did not require the jury to find intent to commit a felony independent of the armed assault and the evidence was constitutionally insufficient to support such a finding." In that Court, petitioner did not even refer to bedrock constitutional law - *e.g., In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *Mullaney* v. *Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). But, in any event, even assuming that the Massachusetts Supreme Judicial Court was clairvoyant in locating and actually deciding the issue as one under the Fifth and Fourteenth Amendments, **[*51]** it cannot be said that that Court, in rejecting petitioner's claim on this point in constitutional terms, decided the matter contrary to Supreme Court precedent or in a manner which constituted an unreasonable application of established federal precedent. We do not gainsay the principle, as echoed in *In re Winship, supra,* and *Mullaney* v. *Wilbur, supra,* that <sup>HN11</sup> the Fifth and Fourteenth Amendments require, at a minimum, that the prosecution prove each and every element of the offense charged beyond a reasonable doubt. That, of course, is a given, and respondent does not suggest to the contrary. But petitioner's entire argument on this point - one in which he seeks to dress a purely state law matter in a new set of constitutional garb - falls with its premise. That is to say, in the state courts, as here, petitioner, with the aid of new counsel, and twenty-twenty hindsight, said that the state trial judge, in defining the elements of entering a dwelling while armed and committing an assault with intent to commit a felony, got it all wrong. Thus, he says here, given the erroneous instructions, the Commonwealth was relieved of its obligation to prove each **[*52]** and every element of that offense beyond a reasonable doubt, contrary to the holdings in *In re Winship, supra,* and *Mullaney* v. *Wilbur, supra.* The chink in this armor, however, is the fact that the Massachusetts Supreme Judicial Court thought and opined quite differently. Contrary to petitioner's importunings, that Court concluded that the trial judge had the right to take on the matter - *i.e.,* that, construing the elements of the offense of entering a dwelling while armed and committing an assault with intent to commit a felony, the trial judge got it all right and properly instructed the jury on all of the elements of that offense. And that interpretation of its own law, to wit: M.G.L. c. 265, § 18A, and the appropriate instructions for that offense as so construed, is entirely a matter of state law, not subject to second guessing by a federal habeas court. *Estelle* v. *McGuire, supra; Lewis* v. *Jeffers,*

*supra; Adelson* v. *DiPaola, supra; Hamm v. Latessa, supra.* And since those instructions were right on the mark, as a matter of state law, petitioner simply cannot make out **[*53]** a claim that those instructions relieved the Commonwealth of the burden of proving each and every element of the offense of entering a dwelling while armed and committing an assault with intent to commit a felony, to fit within the contours of *In re Winship, supra,* and *Mullaney* v. *Wilbur, supra.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n28 Petitioner, referring to that which he perceives as a lack of references to federal cases and authorities, maintains as a consistent theme throughout his Memorandum of Law and his Reply Memorandum that the Massachusetts Supreme Judicial Court simply ignored his federal claims, or did not speak to them, warranting *de novo* review of all of his claims before this court without giving any deference to the decision of the Massachusetts Supreme Judicial Court. There are, of course, two answers to this theme. First, and foremost, it is no wonder that that Court did not cite federal cases book and verse, given the oblique, sometimes hidden, sometimes not made at all, points raised by petitioner in terms of the United States Constitution and interpretations thereof. Secondly, and equally as important, the lack of citation to federal cases is absolutely of no moment. As the Supreme Court has observed (*Early* v. *Packer,* 537 U.S. 3, 8, 154 L. Ed. 2d 263, 123 S. Ct. 362 (2002)):

> First, the Ninth Circuit observed that the state court "failed to cite ... any federal law, much less the controlling Supreme Court precedents." Packer v. Hill, 291 F.3d, at 578. If this is meant to suggest that such citation was required, it was in error. *HN12* A state-court decision is "contrary to" our clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams* v. *Taylor,* 529 U.S. 362, 405-406, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Avoiding these pitfalls does not require citation of our cases-indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them. The Ninth Circuit's disapproval of the Court of Appeal's failure to cite this Court's cases is especially puzzling since the state court cited instead decisions from the California Supreme Court that impose even greater restrictions for the avoidance of potentially coercive jury instructions. *Compare People v. Gainer, supra,* 19 Cal. 3d 835 at 852, 139 Cal. Rptr. 861, 566 P.2d, 997 at 1006 (1977) with *Allan* v. *United States, supra,* 164 U.S. 492 at 501, 17 S. Ct. 154, 41 L. Ed. 2d 528.

**[*54]**

n29 Precisely, as Ground Two, petitioner avers:

> GROUND TWO: The jury instructions did not require the jury to find each essential element of the crime of armed assault in a dwelling Because this was a predicate crime to felony murder, the instructions also did not require the jury to find each essential element of murder.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Finally, and just as decisively, even if the instructions of the trial court permitted the jury, in some fashion, to conclude that the petitioner committed the offense of entering a dwelling while armed and committing an assault with intent to commit a felony absent proof of each and every element thereof, it does not, as observed by the Massachusetts Supreme Judicial Court, affect the outcome of the case in the slightest. And that is because the jury specially found, as indicated in its special verdict (see Supplemental Materials (# 07), Verdict, appended to the Commonwealth's Brief before the Massachusetts Supreme Judicial Court) that petitioner had committed a felony-murder based on armed robbery n30 as a predicate thereof. Indeed, in his petition before this court, **[*55]** petitioner does not even address, insofar as this court can concern, this conclusion of the Massachusetts Supreme Judicial Court that even if these instructions were wrong, it made no difference. n31 Ground Two fails to state a claim for federal habeas relief.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n30 The crime of armed robbery, although brought as a separate charge by separate indictment, was submitted to the jury as a predicate for the felony-murder The armed robbery charge is a matter which may, or may not, be raised herein, although it is not clear. See page 38 and following text, *infra.*

n31 It might make a difference, of course, if the conviction on the charge of entering a dwelling while armed and committing an assault with intent to commit a felony remained. But it did not, since, as observed in the Massachusetts Supreme Judicial Court, the Commonwealth conceded that the conviction on that charge, previously "filed" with the petitioner's consent after trial, was, because it did not allege the name of the victim (and there was more than one), duplicative of the felony-murder conviction. Accordingly, the conviction on the charge of entering a dwelling while armed and committing an assault with intent to commit a felony was vacated on remand.

We say might make a difference, because that is not clear, even if the conviction on the charge of entering a dwelling while armed and committing an

assault with intent to commit a felony remained. And that is because of the so-called concurrent sentence rule or a variant thereof.

Since petitioner was sentenced to life imprisonment without the possibility of parole on the first degree murder conviction, a first degree murder conviction which this court concludes is constitutional in all respects for the reason that felony-murder was amply supported by the showing of an armed robbery, barring the supernatural, petitioner would never serve a day on the armed assault charge even if the conviction on that charge was not vacated. Nor has he suggested any collateral consequences attaching to that conviction (had it not been vacated) beyond the collateral consequences which, perforce, attached to, and remain attached to, his first degree murder conviction mandating a sentence of life imprisonment without the possibility of parole. Some courts - although recognizing that the concurrent sentence rule is not a jurisdictional barrier - have nevertheless applied that doctrine to habeas petitions where, under no circumstances, could a resolution of the conviction in the favor of the petitioner make a whit of difference. For example, in *Scott* v. *State of Louisiana,* 934 F.2d 631, 635 (5th Cir. 1991), that court observed (*Id.*):

> The flaw in the jury instruction relating to the charges of attempted murders does not affect the conviction for second degree murder. The second degree murder conviction and sentence stand. For the murder conviction, the trial court sentenced Scott to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. We are shown no current possibility that Scott will suffer from the sentences he is under for attempted murder. The two 50-year sentences for attempted murder, which run concurrently with the life sentence, have no adverse collateral consequences for Scott because of his life sentence without benefit of parole, probation, or suspension of sentence. *Williams* v. *Maggio,* 714 F.2d 554 (5th Cir. 1983), *cert. denied,* 465 U.S. 1035, 104 S. Ct. 1306, 79 L. Ed. 2d 704 (1984). We therefore affirm the district court's dismissal of habeas corpus relief on the attempted murder counts under the concurrent sentence doctrine.

Other cases echo that view, *e.g., Williams* v .*Maggio,* 714 F.2d 554, 555-556 (5th Cir. 1983); *Malloy* v. *Purvis,* 681 F.2d 736, (11th Cir. 1982); *United States* v. *Truong Dinh Hung,* 629 F.2d 908 (4th Cir. 1980), while other courts have questioned the applicability of the doctrine - at least in the circumstances presented in the cases before those courts, e g, *United States* v. *Belt,* 516 F.2d 873, 876 (8th Cir. 1975), *cert. denied,* 423 U.S. 1056, 46 L. Ed. 2d 646, 96 S. Ct. 790 (1976); *Logan* v. *Lockhart,* 994 F.2d 1324 (8th Cir. 1993).

Here, however, there is no reason to traverse this prickly thicket, since the conviction on the charge of entering a dwelling while armed and committing an assault with intent to commit a felony was, in fact, vacated.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**[*56]**

VII. Ground Three - Ineffective Assistance of Counsel Re: Jury Instructions

In Ground Three, petitioner says that trial counsel's failure to request what he ordains as the correct instructions on armed assault in a dwelling (*i.e.,* the substance of which is set forth above under Ground Two), and trial counsel's failure to object to the (allegedly) incorrect instruction relating to that offense, constituted ineffective assistance of counsel within the meaning of the Sixth Amendment. That claim, to the extent that petitioner seeks federal habeas relief, fails for at least three reasons, and no doubt there are more: First, petitioner has not, in his Memorandum of Law in support of the petition, advanced any argument, much less reasoned argument, on this point. It is accordingly waived. *E.g., United States* v. *Bongiorno,* 106 F.3d 1027, 1034 (1st Cir. 1997); n32 *see also Katz* v. *King,* 627 F.2d 568, 575 (1st Cir.1980) ("If counsel desires our consideration of a particular argument, the argument must appear within the four corners of the brief filed in this court.").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n32 There that court observed (*Id.*):

> To make a bad situation worse, the appellant's briefs in this court advance these alleged constitutional violations in vague and cryptic terms. Appellate judges are not clairvoyants, and it is surpassingly difficult for us to make something out of nothing. *Cf.* William Shakespeare, King Lear act 1, sc. 4 (1605). We have steadfastly deemed waived issues raised on appeal in a perfunctory manner, not accompanied by developed argumentation, *see, e.g., Martinez* v. *Colon,* 54 F.3d 980, 990 (1st Cir.), *cert denied,* 516 U.S. 987, 116 S. Ct. 515, 133 L. Ed. 2d 423 (1995); *Ruiz* v. *Gonzalez Caraballo,* 929 F.2d 31, 34 n.3 (1st Cir. 1991); *United States* v *Zannino,* 895 F.2d 1, 17 (1st Cir.), *cert denied,* 494 U.S. 1082, 110 S. Ct. 1814, 108 L. Ed. 2d 944 (1990), and this case does not warrant an exception to that salutary practice. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work ...." *Zannino,* 895 F.2d at 17.

To that, this court would only add that district judges, like appellate judges, are not clairvoyants. Absent argument, it should not be left to the habeas court to make petitioner's arguments.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*57]**

Second, that claim was never fairly presented to the state courts. n33 As we have indicated above with respect to Ground Two, in his brief before the Massachusetts Supreme Judicial Court, petitioner, in finding fault with the trial judge's instruction *vis a vis* the entering a dwelling while armed offense, relied exclusively on state law authority. n34 Tucked away in the middle of that three page argument was the single sentence: "defense counsel's failure to request this instruction on an essential element of the crime was ineffective." He did not claim that that failure warranted reversal of his convictions. Indeed, on this, he said nothing more. n35 As our Court of Appeals has said, *HN13* "the exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; ... oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988). And that is precisely the case here. The single sentence, "defense counsel's failure to request this instruction on an **[*58]**  essential element of the crime was ineffective.[,]" without any suggestion that petitioner was entitled to any relief on account of that fact, is the paradigm "needle in the haystack" referred to in *Martens, supra.* *HN14* The requirement for the exhaustion rule, grounded in constitutional notions of comity, is to ensure that state courts have the first opportunity to correct their constitutional errors. *Duncan v. Henry,* 513 U.S. 364, 365, 130 L. Ed. 2d 865, 115 S. Ct. 887 (1995) (citing *Picard v. Connor,* 404 U.S. 270, 275, 30 L. Ed. 2d 438, 92 S. Ct. 509 (1971)). Although petitioner did seek relief from the Massachusetts Supreme Judicial Court on grounds of ineffective assistance of counsel for counsel's alleged failings in permitting petitioner to make a statement to the police prior to indictment, n36 he never asserted that he was entitled to relief - *i.e.,* he never asked the state court to correct their constitutional errors, *Duncan, supra, Picard, supra* - based on a claim that trial counsel missed the switch in connection with the trial court's instructions concerning entering a dwelling while armed. For that reason, and quite understandably,  **[*59]**  the Massachusetts Supreme Judicial Court, as evidenced in its opinion, never addressed this matter relating to instructions through the lens of the Sixth Amendment right to effective assistance of counsel. Petitioner never presented that claim squarely to the state courts, and he is not entitled to do so here for the first time.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n33 Which is why, perhaps, counsel has not even briefed the matter before this court.

n34 With the one exception that he cited *Jackson v. Virginia,* 443 U.S. 307, 315-317, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), for a totally different point - *i.e.* his claim that the evidence was insufficient to support a conviction for entering a dwelling while armed.

n35 And a claim of ineffective assistance of counsel in this respect was not made in his motion for a new trial, although, in that motion for a new trial, petitioner loudly proclaimed that the instructions of the trial judge on a number

of matters warranted a new trial.

n36 *i.e.,* that which is set forth as Ground One herein.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*60]**

In any event, even assuming that petitioner has not abandoned the point by failing to present any argument, reasoned or otherwise, and even assuming that he properly exhausted the claim, it fails on the merits. n37 At bottom, it appears n38 that petitioner is claiming that trial counsel was ineffective for his failure to give his [current counsel's] spin as to the proper instructions on the entering a dwelling while armed offense. His current spin, however, was, as indicated above, p. 27, characterized by the Massachusetts Supreme Judicial Court as having "no merit" and as being "plainly wrong". *HN15*🔼It can hardly be said that trial counsel performance, in failing to advance a claim which was without merit and which was plainly wrong, "...fell below an objective standard of reasonable effectiveness ..." within the meaning of *Strickland v. Washington,* 466 U.S. 668, 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Ground Three fails to state a claim upon which relief may be granted.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n37 *HN16*🔼Even if a claim or claims are not exhausted, and the petition is appropriate for dismissal for want of exhaustion, as a "mixed" petition or otherwise, a court may nevertheless dispose of nonmeritorious claims on the merits without reaching the exhaustion issue *Cranberry v. Greer,* 481 U.S 129, 135 n.7, 95 L. Ed. 2d 119, 107 S. Ct. 1671 (1987); *Palmariello v Superintendent of MCI Norfolk,* 873 F.2d 491 (1st Cir. 1989); 28 U.S.C. 2254(b)(2). **[\*61]**

n38 We say "appears" because, as observed above, apart from asserting it in his petition for a writ of habeas corpus as Ground Three, he has never presented any argument on the point, either here, or before the state courts.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

VIII. Ground Four - Sufficiency of the Evidence

In Ground Four of his petition, petitioner says that Ground Four - that the evidence was insufficient to support a finding of armed assault in a dwelling and felony murder.

That point, however, was not briefed in his Memorandum in Support of the petition, or in the Reply Memorandum. For that reason, this court may deem the point waived as a grounds for habeas relief. *E.g., United States v.*

*Bongiorno,* 106 F.3d 1027, 1034 (1st Cir. 1997); *see also Katz v. King,* 627 F.2d 568, 575 (1st Cir. 1980). More to the point, however, despite the assertion of Ground Four, petitioner, in his Memorandum of Law, says unequivocally: "The sufficiency of the evidence claim is not presented here." Memorandum of Law (# 22, p. 48). That being the case, Ground Four does not warrant any relief - much **[*62]** less habeas relief.

IX. Other Matters

Double Jeopardy

In his Memorandum of Law, petitioner says that the felony murder instruction violated petitioner's double jeopardy rights by permitting the jury to find felony murder on either armed assault in a dwelling or armed robbery, that claim does not warrant habeas relief for at least two reasons. First, it is not a ground asserted in the petition for a writ of habeas corpus. Ground Two makes no such claim. See note 29, *supra.* It is merely a musing added in a memorandum of law filed almost a year after the petition for a writ of habeas corpus was filed. n39 Secondly, and more importantly, wholly apart from the fact that this claim is not advanced as a ground for relief in the petition, this claim - framed in terms of double jeopardy - was never presented to the state courts in any fashion. n40 Comity clearly cautions a federal habeas court from ordering the vacating of a state court conviction on the basis of a claim never presented to the state courts.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n39 *HN17* It is the petition for a writ of habeas corpus, not subsequently filed memorandum, which defines the claims for habeas relief. That is not a mere matter of *ipse dixit.* To the contrary, as current counsel for petitioner surely knows, it is a requirement of Rule 2(c) of the Rules Governing Section 2254 Cases. That rule provides:

> *HN18* (c) **Form of Petition.** The petition shall be in substantially the form annexed to these rules, except that any district court may by local rule require that petitions filed with it shall be in a form prescribed by the local rule. Blank petitions in the prescribed form shall be made available without charge by the clerk of the district court to applicants upon their request. It shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified. It shall also state the relief requested. The petition shall be typewritten or legibly handwritten and shall be signed under penalty of perjury by the petitioner. (Emphasis added).

And that rule is not a matter of elevating form over substance. As the commentators to that rule have noted, *inter alia:*

Subdivision (c) provides that unless a district court requires otherwise by local rule, the petition must be in the form annexed to these rules. Having a standard prescribed form has several advantages In the past, petitions have frequently contained mere conclusions of law, unsupported by any facts Since it is the relationship of the facts to the claim asserted that is important, these petitions were obviously deficient. In addition, lengthy and often illegible petitions, arranged in no logical order, were submitted to judges who have had to spend hours deciphering them. For example, in _Passic v. State,_ 98 F Supp. 1015, 1016 (E.D. Mich. 1951), the court dismissed a petition for habeas corpus, describing it as "two thousand pages of irrational, prolix and redundant pleadings ***."

Administrative convenience, of benefit to both the court and the petitioner, results from the use of a prescribed form.

****

Approximately 65 to 70% of all districts have adopted forms or local rules which require answers to essentially the same questions as contained in the standard form annexed to these rules. All courts using forms have indicated the petitions are time-saving and more legible. The form is particularly helpful in getting information about whether there has been an exhaustion of state remedies or, at least, where that information can be obtained.

The requirement of a standard form benefits the petitioner as well. His assertions are more readily apparent, and a meritorious claim is more likely to be properly raised and supported. The inclusion in the form of the ten most frequently raised grounds in habeas corpus petitions is intended to encourage the applicant to raise all his asserted grounds in one petition. It may better enable him to recognize if an issue he seeks to raise is cognizable under habeas corpus and hopefully inform him of those issues as to which he must first exhaust his state remedies.

****

Subdivision (c) also requires that all available grounds for relief be presented in the petition, including those grounds of which, by the exercise of reasonable diligence, the petitioner should be aware. This is reinforced by rule 9(b), which allows dismissal of a second petition which fails to allege new grounds or, if new grounds are alleged, the judge finds an inexcusable failure to assert the ground in the prior petition. (Emphasis added).

And the commentators had, and have, it right on the mark. As a practical matter, insofar as this court is aware, the district judges in this court, upon receipt of a petition for a writ of habeas corpus unadorned by legal memoranda (which, experience shows, is the usual case), first look to the petition and the grounds asserted therein and compare those grounds to grounds previously asserted in prior petitions (if any) to fulfill their obligation *vis a vis* successive petitions. The judges next look to the grounds set forth in the petition and the reference to the prior state opinions in order to determine whether a petition should be dismissed *sua sponte* for the reason that it is patently clear that the claims have not been exhausted in the state courts. None of these screening functions, of course, could be undertaken lest the grounds be set forth in the petition. Moreover, even after that initial screening, it is a common practice of many of the judges in this district to direct the respondent to first assert affirmative defenses before filing the lengthy appendix, including, but not limited to, the question of exhaustion - again a function which can only be performed by a review of the grounds set forth in the petition.

And this should come as no surprise to current counsel for petitioner, who has filed his fair share of petitions for a writ of habeas corpus in this court, and who, in the past, has moved to amend petitions where new grounds are to be asserted, or old grounds withdrawn. *See e.g., Gabriel Cruz v. Michael T. Maloney,* Civil Action No. 00-12367-PBS, Assented to Motion for Leave to File Second Amended Petition for a Writ of Habeas Corpus (# 12). **[*63]**

n40 Respondent, in his Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus (# 27), at p. 5, n.2, pointed out that this double jeopardy claim was not asserted as a ground for relief in his petition for a writ of habeas corpus, and was not presented to the state courts in any fashion. Petitioner filed a Reply Memorandum (# 30) some two months later. He did not, in that Reply Memorandum, gainsay respondent's points on this double jeopardy matter in any respect. He did not move to amend his petition thereafter. Petitioner has never suggested that this double jeopardy claim was fairly presented to the state courts.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Armed Robbery

In his Memorandum of Law, petitioner takes issue with the trial judge's instructions on the crime of armed robbery. As is the case with the double jeopardy claim set forth above, this is not a ground set forth in the petition. n41 Charitably treating it as a ground for relief, that claim likewise fails for the reasons set forth with respect to the armed assault in a dwelling instruction referred to above at pp. 25-32.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n41 To be sure, petitioner does refer to the armed robbery charges in a subsection of Ground Two In Ground Two, he asserts the ground, to wit. "The

jury instructions did not require the jury to find each essential element of the crime of armed assault in a dwelling. Because this was a predicate crime to felony murder, the instructions also did not require the jury to find each essential element of murder." Later, under the SUPPORTING FACTS subsection - *i.e.,* a recitation of the facts which purportedly support his grounds for relief - he casually refers to the armed robbery charge.

Unlike the double jeopardy claim, however, it appears that the petitioner did take issue with the armed robbery instructions before the Massachusetts Supreme Judicial Court.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*64]**

In responding to his claims *vis a vis* the instructions for the offense of armed robbery, the Massachusetts Supreme Judicial Court concluded:

> *Instructions regarding armed robbery and attempted armed robbery.* The defendant argues that "armed robbery" was never independently defined and that "attempt" was misdefined. The defendant stresses the significance of the attempt definition because, he contends, the felony-murder conviction predicated on armed robbery likely rested on a determination of attempt because the Commonwealth presented little evidence that any property was stolen. As a result of this incorrect definition, the defendant concludes, the jury may have convicted him without proof that his conduct, or that of his coventurers, constituted actual attempt. He further argues that this improper definition undermined his defense of withdrawal. *See Commonwealth v. Ortiz,* 408 Mass. 463, 470-473, 560 N.E.2d 698 (1990). We disagree.

> Because the defendant raised this issue in his motion for a new trial, and the judge considered it, we review the claim as if there was an objection made at trial. *Commonwealth v. Hallet,* 427 Mass. 552, 554, 694 N.E.2d 845 (1998). **[*65]**  The motion judge, who was not the trial judge, found that the trial judge "instructed that the jury must find four elements[:] that the defendant was armed with a dangerous weapon[;] that the defendant either intended to apply actual force and violence to the body of the victim or intended to use threatening words or gestures to put the victim in fear[;] that the defendant intended to take money or other property with the intention of stealing it[,] and that the defendant intended to take the money or property from the person or immediate control of the victim." The motion judge concluded that the trial judge instructed the jury as to the requisite elements of armed robbery. The motion judge further found that the instruction on attempt, "when viewed with the instruction as a whole, correctly instructed on what constituted an attempt to commit armed robbery." A review of the charge reveals that these findings are well

supported by the record. There was no error.

*(e) Instruction on attempted armed robbery.* The defendant alleges that the jury were not instructed that, on the facts of this case and the instructions given, each of the elements of armed robbery and attempted **[\*66]** armed robbery were wholly included in the elements of armed assault in a dwelling. He notes that the defendant was never indicted for armed robbery or attempted armed robbery. Thus, he argues that neither armed robbery nor attempted armed robbery may be an independent underlying felony for the felony-murder conviction. The defendant's claim has no merit.

Armed robbery or attempted armed robbery are proper predicate felonies to support a conviction of murder in the first degree based on a theory of felony-murder even though a defendant is not indicted for either crime. *Commonwealth v. Christian,* 430 Mass. 552, 556, 722 N.E.2d 416 (2000) ("we can envision no situation in which an armed robbery would not support a conviction of felony-murder"). "An underlying but uncharged felony may serve as the basis for a felony-murder conviction." *Commonwealth v. Eagles,* 419 Mass. 825, 839 n. 16, 648 N.E.2d 410 (1995), citing *Commonwealth v. Matchett,* 386 Mass. 492, 497-498, 436 N.E.2d 400 & n. 7, 386 Mass. 492, 436 N.E.2d 400 (1982). There was no error.

There was no error - much less constitutional error warranting habeas relief. Just as was the case with the armed assault **[\*67]** instructions referred to above, 25-32, to the extent that petitioner contends that the Massachusetts Supreme Judicial Court misconstrued the elements of the crime of armed robbery, or attempt, or attempted armed robbery, that Court is the sole and exclusive arbiter of that question. *E.g., Estelle v. McGuire,* 502 U.S. 62, 67-68, 116 L. Ed. 2d 385, 112 S. Ct. 475 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 780, 111 L. Ed. 2d 606, 110 S. Ct. 3092 (1990); *Adelson v. DiPaola,* 131 F.3d 259, 262 n. 3 (1st Cir. 1997); *Hamm v. Latessa,* 72 F.3d 947 (1st Cir. 1995).

Just as was the case with the armed assault instructions referred to above, 25-32, petitioner's attempt to cast this into a constitutional setting founders as well. Again, we do not, indeed, cannot, quarrel with the bedrock, as echoed in *In re Winship, supra,* and *Mullaney v. Wilbur, supra,* that the Fifth and Fourteenth Amendments require, at a minimum, that the prosecution prove each and every element of the offense charged beyond a reasonable doubt. In the context of this case, that means that, to the extent that armed robbery or attempted armed robbery could serve **[\*68]** as a predicate to felony murder, then the Commonwealth was required to prove each and every element of armed robbery or attempted armed robbery beyond a reasonable doubt. But, once again, petitioner's entire argument on this point - one in which he also seeks to paint a purely state law matter with a broad constitutional brush - falls with its premise. That is to say, in the state courts, as here, petitioner said that the state trial judge, in defining the elements of armed robbery, attempt, and attempted armed robbery, again got it all wrong. Thus, he says here,

given the erroneous instructions, the Commonwealth was relieved of its obligation to prove each and every element of the alternative offenses (armed robbery or attempted armed robbery) beyond a reasonable doubt, contrary to the holdings in *In re Winship, supra,* and *Mullaney v. Wilbur, supra.* The Achilles heel of all of this, however, is, once again, the fact that the Massachusetts Supreme Judicial Court thought and opined quite differently. Contrary to petitioner's importunings, that Court concluded that the trial judge had the precisely correct take on how to define armed robbery, attempt,

 **[*69]**  and attempted armed robbery - i.e., that, construing the elements of the offense of armed robbery and attempted armed robbery, the trial judge got it all right and properly instructed the jury on all of the elements of those offenses. And that interpretation of its own law, and the appropriate instructions for those offenses as so construed, is entirely a matter of state law, not subject to second guessing by a federal habeas court. *Estelle v. McGuire, supra; Lewis v. Jeffers, supra; Adelson v. DiPaola, supra; Hamm v. Latessa, supra.* And since those instructions were and are correct, as a matter of state law, petitioner simply cannot make out a claim that those instructions relieved the Commonwealth of the burden of proving each and every element of the offense of armed robbery or attempted armed robbery as a predicate for felony murder in violation of the teachings of *In re Winship, supra,* and *Mullaney v. Wilbur, supra.*

Finally, and again just as decisively, even if the instructions of the trial court on armed robbery or attempted armed robbery were erroneous, thus relieving the Commonwealth **[*70]**  of its constitutional burden, it would make no difference. We have previously concluded that there was no error in the trial judge's instructions on the offense of armed assault. And the jury specially found, as indicated in its special verdict (see Supplemental Materials (# 07), Verdict, appended to the Commonwealth's Brief before the Massachusetts Supreme Judicial Court) that petitioner had committed a felony-murder based on the predicate offense of armed assault in a dwelling. Accordingly, even if the instructions on armed robbery, attempt, or attempted armed robbery, were erroneous, the felony murder conviction would still stand, and habeas relief would not be warranted. n42

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n42 There was no conviction for armed robbery or attempted armed robbery for the simple reason that those charges were not brought against the defendant by separate indictments. Those offenses only served as a predicate to felony murder, totally proper under Massachusetts law, even though not charged as a separate offense by separate indictment. See *HN19* "underlying but uncharged felony may serve as the basis for a felony-murder conviction." *Commonwealth v. Eagles,* 419 Mass. 825, 839 n. 16, 648 N.E. 2d 410 (1995), citing *Commonwealth v. Matchett,* 386 Mass. 492, 497-498, 436 N.E.2d 400 & n. 7, 386 Mass. 492, 436 N.E.2d 400 (1982).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

 **[*71]**

X. Conclusion

Petitioner asserts four grounds for habeas relief in his petition for a writ of habeas corpus. He has abandoned one claim (Ground Three) and specifically disclaimed another (Ground Four). The remaining claims fail to state a claim upon which the Great Writ should issue. This court accordingly recommends n43 that the district judge to whom this case is assigned dismiss the petition for a writ of habeas corpus on the merits for failure to state a claim upon which relief may be granted.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n43 The parties are hereby advised that under the provisions of Rule 72(b) of the Federal Rules of Civil Procedure and Rule 2(b) of the Rules for United States Magistrate Judges in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file specific and written objections thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this rule shall preclude further appellate review. *See Keating* v. *Secretary of Health and Human Services,* 848 F.2d 271 (1st Cir. 1988), *United States* v. *Emiliano Valencia-Copete,* 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc.* v. *Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *United States* v. *Vega,* 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott* v. *Schweiker,* 702 F.2d 13, 14 (1st Cir. 1983); *see also, Thomas* v. *Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - **[*72]**

Lawrence P. **Cohen**

UNITED STATES MAGISTRATE JUDGE