## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWARD TAVARES, JR.,     ) | |
|       PETITIONER ,     ) | |
|                ) | |
| v.                     ) | CIVIL ACTION |
|                ) | NO. 04-40059-FDS |
| STEVEN O'BRIEN,       ) | |
|       RESPONDENT.     ) | |

## RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ORDER PETITIONER TO AMEND PETITION TO INCLUDE ONLY EXHAUSTED CLAIMS

The respondent, Steven O'Brien, submits this memorandum of law in support of his motion to order Edward Tavares ("petitioner") to amend his habeas corpus petition to include only those claims which are exhausted.  As this memorandum explains, the petitioner has filed a mixed habeas petition containing both exhausted and unexhausted claims.  Since the statute of limitations has otherwise run, dismissal of the petition pending exhaustion of all claims would result in the petitioner's being prohibited from refiling at a later date.  *See* 28 U.S.C. § 2244(d)(1).  Consequently, this Court should order the petitioner to amend his petition to include only those claims which are already exhausted so that the case may proceed in due course.[1]

## FACTUAL RECITATION

The facts underlying the petitioner's convictions are set forth in the Massachusetts Appeals Court's opinion in *Commonwealth v. Tavares*, 27 Mass. App. Ct. 637, 541 N.E.2d 578

---

[1] Should the Court rule that the petitioner has exhausted his state remedies, the respondent respectfully requests thirty days from the date he receives notice of the ruling to file an answer to the petition.

2

(1989).  For purposes of this memorandum, it suffices to quote the following passage from that

decision:

> About 4:00 A.M. on May 26, 1983, a truck driver on his way to work in Acushnet
> saw a young woman staggering in the middle of New Plainville Road.  Her
> clothes were wet and torn; her shirt was undone; her face was bloody; "she was
> really beat up"; she had difficulty speaking.  The driver placed her in his truck
> (she was unable to climb in on her own) and brought her to a New Bedford police
> station.  The victim was then taken to the emergency room of St. Luke's hospital.
> Because of the extent of her injuries, she was later transferred to Massachusetts
> Eye and Ear Infirmary.

*Id.* at 638, 541 N.E.2d at 579.

## PRIOR PROCEEDINGS

On June 28, 1983, a Bristol County grand jury returned indictments charging the

petitioner with assault with intent to murder (Mass. G.L. c. 265, § 15) (No. 12806), and assault

and battery (Mass. G.L. c. 265, § 13A) (No. 12805).  [*See* Supplemental Appendix ("S.A.") 1-

31].  Subsequently, on November 29, 1983, the grand jury returned an indictment charging the

petitioner with aggravated rape (Mass. G.L. c. 265, § 22A) (No. 13504).  [S.A. 32-50].  The

charges were consolidated and the petitioner was tried from March 24 through March 31, 1987

before Superior Court Judge Sheehan and a jury.  [S.A. 4-5, 22-23, 35-36].  The jury convicted

the petitioner of all counts on March 31, 1987, and Judge Sheehan sentenced him to a committed

term of life in State prison for the aggravated rape, and a committed, concurrent, eight-to-ten year

State prison term for the assault with intent to murder.  [S.A. 5, 36].  After obtaining the

petitioner's consent, the judge filed the petitioner's assault and battery conviction.  [S.A. 23].[2]

---

[2] "It has long been the practice in this Commonwealth that a judge, after a plea of guilty
or a conviction may order that the conviction be placed on file."  *Commonwealth v. Delgado*, 367
Mass. 432, 437-438, 326 N.E.2d 716, 719 (1975).  The effect of placing a conviction or guilty
plea on file is that no appeal may be taken because the judgment is not complete in a criminal

3

The petitioner appealed his convictions to the Massachusetts Appeals Court, which affirmed the judgments on August 1, 1989. *See Commonwealth v. Tavares*, 27 Mass. App. Ct. 637, 541 N.E.2d 578 (1989). The petitioner did not apply for further appellate review.

On February 27, 1990, the petitioner filed a *pro se* motion for a new trial. [S.A. 37]. The docket sheets reflect that he challenged only his conviction for aggravated rape and the motion was never acted upon.[3] The petitioner was subsequently appointed counsel who filed the petitioner's second new trial motion on November 12, 1991. [S.A. 7, 23, 38]. This motion challenged all three convictions and was denied on December 21, 1992. [S.A. 7, 23, 38]. The petitioner filed a notice of appeal from this decision in the Superior Court on January 14, 1993, but the case was not docketed in the Appeals Court until April 20, 2001. [S.A. 7, 23, 38, 51].[4] On February 27, 2003, the Appeals Court affirmed the judgment denying the new trial motion in an unpublished memorandum and order issued pursuant to its rule 1:28 *See Commonwealth v. Tavares*, 57 Mass. Ap. Ct. 1111, 784 N.E.2d 50 (2003). [S.A. 53-57].

The petitioner filed his application for further appellate review ("ALOFAR") in the Supreme Judicial Court on March 18, 2003. [S.A. 58-78]. In his ALOFAR, he pressed four claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, and one claim that the trial judge should have recused himself. Specifically, the

---

case until a sentence is imposed. *Id.*

[3] A motion that is not acted upon is treated as denied. *Commonwealth v. Reddick*, 439 Mass. 1001, 1001, 785 N.E.2d 676, 677 (2003).

[4] Nothing in the state court record explains this extraordinary delay. What the record does reflect is the petitioner's constant and repeated challenges to his convictions including the appointment of three different lawyers, the latest of whom represented him in the Appeals Court, and the filing of five additional motions for a new trial.

4

petitioner claimed that trial counsel failed to: 1) satisfy his promise, made during opening

statement, to present alibi witnesses; 2) object to testimony from the physician who examined the

victim immediately after the rape, indicating that sperm was present in her vagina; 3) conduct

additional forensic testing; and 4) seek dismissal of the rape indictment due to the loss of the rape

kit.  [S.A. 68-75].  The petitioner also claimed to have received constitutionally deficient counsel

on direct appeal because that attorney also failed to raise these issues.  [S.A. 75-76].  Finally, the

petitioner claimed the trial judge should have recused himself because he had represented the

petitioner in a previous sexual assault case prior to his appointment to the bench.  [S.A. 76-77].

The Supreme Judicial Court denied the petitioner's ALOFAR on April 30, 2003.  *See*

*Commonwealth v. Tavares*, 439 Mass. 1105, 787 NE.2d 1059 (2003).  [S.A. 79].  The petitioner

filed his habeas corpus petition in this Court on April 26, 2004.[5]

## ARGUMENT

THIS COURT SHOULD ORDER THE PETITIONER TO AMEND HIS PETITION TO
PRESENT ONLY THOSE CLAIMS WHICH ARE EXHAUSTED OR IN THE
ALTERNATIVE, DISMISS THE PETITION.

> A.    The Petitioner's Claim That the Trial Judge Should Have Recused Himself Is
>         Unexhausted.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available

state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights."  *Baldwin v. Reese*, 541 U.S. ___, 124

S. Ct. 1347, 1349 (2004) (internal quotations omitted); *Adelson v. Dipaolo*, 131 F.3d 259, 261

---

[5] The respondent treats the operative date of the petitioner's filing as the date he filed his
original habeas petition, rather than the date he filed his petition that conforms with 28 U.S.C. §
2254 Rule 2.

5

(1st Cir. 1997).  "The exhaustion doctrine is principally designed to protect the state courts' role

in the enforcement of federal law and prevent disruption of judicial proceedings." *Rose v. Lundy,*

455 U.S. 509, 518 (1982) (citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S.

484, 490-491 (1973)).  It also "promotes comity in that it would be unseemly in our dual system

of government for a federal district court to upset a state court conviction without an opportunity

to the state courts to correct a constitutional violation." *Duncan v. Walker*, 533 U.S. 167, 179

(2001) (internal quotations omitted).  The Supreme Court's interpretation of the doctrine,

codified at 28 U.S.C. § 2254(b)(1)(A), "provides a simple and clear instruction to potential

litigants:  before you bring any claims to federal court, be sure that you first have taken each one

to state court." *Rose*, 455 U.S. at 520.

    To satisfy the exhaustion requirement, a petitioner must "demonstrate that he tendered

each claim 'in such a way as to make it probable that a reasonable jurist would have been alerted

to the existence of the federal question.'" *Adelson*, 131 F.3d at 262 (quoting *Scarpa v. Dubois*,

38 F.3d 1, 6 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995)).[6]  This "calculation is informed

'by trappings - [*i.e.*] specific constitutional language, constitutional citation, appropriate federal

precedent, substantive constitutional analogy, [and] argument with no masking state-law

character.'" *Id.* at 262 (quoting *Nadworny v. Fair*, 872 F.2d 1093, 1101 (1st Cir. 1989), *cert.*

*denied*, 507 U.S. 963 (1993)).  "The fewer the trappings that adorn a petitioner's state-court

---

[6] Because a petitioner for habeas relief must present his claims to the state's highest court
before they can be properly deemed exhausted, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999),
the pleadings contained within the "four corners" of the petitioner's ALOFAR determine whether
he exhausted a particular claim. *Barresi v. Maloney*, 296 F.3d 48, 52 (1st Cir. 2002); *Baldwin v.*
*Reese*, 541 U.S. ___, 124 S. Ct. 1347, 1349 (2004).

6

filings, the less likely that [a federal court] will find his federal claim to have been exhausted." *Id.*

In his habeas petition, the petitioner's third ground for relief was "[t]he trial judge should have recused himself because he had represented [the petitioner] in" two previous sexual assault cases, one of which involved the daughter of the judge's former secretary. *See* Habe. Pet. ¶ 12C. The petition is conspicuously silent as to how this forms the basis for a Federal claim. In his ALOFAR, the petitioner presented this claim as: "The trial judge should have recused himself because he had represented the defendant in a previous sexual assault case." [S.A. 76]. The petitioner, citing only Massachusetts cases, presented this as a state-law claim to the SJC, and in the last sentence of the body of this argument, he merely hinted that he had "been denied his rights to a fair trial and due process as secured by the Sixth and Fourteenth Amendments of the Constitution of the United States. . ." [S.A. 76-77]. In short, the petitioner's ALOFAR failed to articulate, in even the barest of terms, how the judge's decision to adjudicate the case violated his Sixth Amendment rights. "[T]he mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim." *Adelson*, 131 F.3d at 263 (citing *Gagne v. Fair*, 835 F.2d 6, 8 (1st Cir. 1987); *Dougan v. Ponte*, 727 F.2d 199, 201 (1st Cir. 1984)). Under these circumstances, the petitioner's third ground for relief is unexhausted and he has presented the Court with a "mixed" petition. *See, e.g., Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004) ("mixed" petition contains both exhausted and unexhausted claims).

7

B.    This Court Should Order the Petitioner To Amend His Petition To Present Only Those Claims Which He Has Exhausted or, Should He Refuse, Dismiss the Petition in Its Entirety.

"Under *Rose v. Lundy* . . . federal district courts must dismiss 'mixed' habeas corpus petitions." *Pliler v. Ford*, 542 U.S. ___, 124 S. Ct. 2441, 2444 (2004). *Rose*, however, was decided fourteen years prior to Congressional enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), and its one-year statute of limitations on habeas corpus petitions. *See* 28 U.S.C. § 2244(d)(1). "The combined effect of *Rose* and AEDPA's limitations period is that if a petitioner comes to federal court with a mixed petition toward the end of the limitations period, a dismissal of his mixed petition could result in the loss of all of his claims -- including those already exhausted -- because the limitations period could expire during the time a petitioner returns to state court to exhaust his unexhausted claims." *Pliler*, 124 S. Ct. at 2445. This case presents such a situation because the petitioner did not file his petition until four days before the statute of limitations ran. [S.A. 80-81]. 28 U.S.C. § 2244(d)(1). While the petitioner timely filed his application for habeas corpus relief, his filing of a mixed petition, combined with his dilatoriness, has left him, and the Court, with few options with respect to his unexhausted claim.

Typically, a Court will dismiss a mixed petition without prejudice in order to permit the petitioner to exhaust his unexhausted claims in state court. Such an order would not ordinarily have any significant impact on the statute of limitations because a properly filed application for state collateral review tolls the statute. 28 U.S.C. § 2244(d)(2); *Nowaczyk v. Warden*, 299 F.3d 69, 71 (1st Cir. 2002). Here, however, an order of this nature would bar the Court from hearing any of the petitioner's claims, including those he had previously exhausted, because the four days he had remaining when he filed his petition in April, 2004, have long since elapsed and because

8

nothing other than this petition has been pending in the interim. *See Duncan*, 533 U.S. at 181-182 (federal habeas corpus petition does not toll AEDPA's statute of limitations).

In light of the interaction between *Rose* and AEDPA's statute of limitations, many courts, the First Circuit included, have adopted so-called "stay-and-abeyance" procedures. *See Nowaczyk*, 299 F.3d at 79. "The stay-and abeyance procedure involves three steps: first, dismissal of any unexhausted claims from the original mixed habeas petition; second, a stay of the remaining claims, pending exhaustion of the dismissed unexhausted claims in state court; and third, amendment of the original petition to add the newly exhausted claims that then relate back to the original petition." *Pliler*, 124 S. Ct. at 2445. Although the First Circuit has encouraged use of this procedure in similar circumstances, *see Neverson*, 366 F.3d at 43, several reasons militate against employing it in this case.

First, the use of a stay is inconsistent with the strict time limits established by AEDPA's statute of limitations, *see* 28 U.S.C. § 2244(d), and with the interests of finality that underlie the entire statutory scheme. *See Duncan*, 533 U.S. at 178-179. Second, notwithstanding the First Circuit's approval of the procedure, its vitality came into question when the Supreme Court granted certiorari in *Rhines v. Weber*, Supreme Court No. 03-9046, to decide whether it is in fact permissible.

Finally, a stay, like equitable tolling, is a "narrow safety valve," *Brackett v. United States*, 270 F.3d 60, 67 ) (1st Cir. 2001), *cert. denied*, 535 U.S. 1003 (2002) (analyzing § 2254 habeas cases), and should be used only in "exceptional circumstances." *Cf. Neverson*, 366 F.3d at 40 (discussing when equitable tolling is appropriate). There is nothing exceptional about this case. The petitioner waited for 361 of his 365 days to expire before filing his habeas corpus petition,

which is based on his 1987 convictions.  None of the claims he raises involves newly discovered

evidence.  In fact, he was aware of each of them as early as 1992, when he filed his second

motion for a new trial.  While his habeas petition was timely filed, this is not a case which calls

for this Court to issue a stay-and-abeyance, an order of questionable validity, because there is no

explanation for his coming so close to the statute of limitations other than dilatoriness.  *Cf.*

*Neverson*, 366 F.3d at 42 (equitable tolling "is not available to rescue a litigant from his own lack

of due diligence.").  Consequently, the Court should order the petitioner to amend his petition to

present only those claims which he has exhausted, or, should he refuse, dismiss the mixed

petition in its entirety.

Respectfully submitted,

THOMAS F. REILLY
Attorney General


/s/ Daniel I. Smulow
Daniel I. Smulow, BBO # 641668
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2949


Date: November 10, 2004

### Certificate of Service

I hereby certify that a true copy of the above document was served on Edward Tavares,
*pro se*, N.C.C.I. - Gardner, P.O. Box 466, 500 Colony Road, Gardner, MA 01440, by first class
mail, postage prepaid, on November 10, 2004.

/s/ Daniel I. Smulow