# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

EDWARD TAVARES, JR.,      )
     PETITIONER ,       )
                   )
v.                   )           CIVIL ACTION
                   )           NO. 04-40059-FDS
STEVEN O'BRIEN,       )
     RESPONDENT.    )
_____)

## RESPONDENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS

The respondent, Steven O'Brien, through his counsel, the Attorney General of the Commonwealth of Massachusetts, hereby opposes the Petition for a Writ of Habeas Corpus that is the subject of the captioned action. The petitioner, Edward Tavares, has not demonstrated that the claims in his petition warrant the extraordinary relief of a writ of habeas corpus.

## PRIOR PROCEEDINGS

On June 28, 1983, a Bristol County grand jury returned indictments charging the petitioner with assault with intent to murder (Mass. G.L. c. 265, § 15) (No. 12806), and assault and battery (Mass. G.L. c. 265, § 13A) (No. 12805). [*See* Supplemental Appendix ("S.A.") 1-31]. Subsequently, on November 29, 1983, the grand jury returned an indictment charging the petitioner with aggravated rape (Mass. G.L. c. 265, § 22A) (No. 13504). [S.A. 32-50]. The charges were consolidated and the petitioner was tried from March 24 through March 31, 1987 before Superior Court Judge Sheehan and a jury. [S.A. 4-5, 22-23, 35-36]. The jury convicted the petitioner of all counts on March 31, 1987, and Judge Sheehan sentenced him to a committed term of life in State prison for the aggravated rape, and a committed, concurrent, eight-to-ten year

2

State prison term for the assault with intent to murder. [S.A. 5, 36]. After obtaining the petitioner's consent, the judge filed the petitioner's assault and battery conviction. [S.A. 23].[1]

The petitioner appealed his convictions to the Massachusetts Appeals Court, which affirmed the judgments on August 1, 1989. *See Commonwealth v. Tavares*, 27 Mass. App. Ct. 637, 541 N.E.2d 578 (1989). The petitioner did not apply for further appellate review.

On February 27, 1990, the petitioner filed a *pro se* motion for a new trial. [S.A. 37]. The docket sheets reflect that he challenged only his conviction for aggravated rape and the motion was never acted upon.[2] The petitioner was subsequently appointed counsel who filed the petitioner's second new trial motion on November 12, 1991. [S.A. 7, 23, 38]. This motion challenged all three convictions and was denied on December 21, 1992. [S.A. 7, 23, 38]. The petitioner filed a notice of appeal from this decision in the Superior Court on January 14, 1993, but the case was not docketed in the Appeals Court until April 20, 2001. [S.A. 7, 23, 38, 51].[3] On February 27, 2003, the Appeals Court affirmed the judgment denying the new trial motion in an unpublished memorandum and order issued pursuant to its rule 1:28 *See Commonwealth v. Tavares*, 57 Mass. Ap. Ct. 1111, 784 N.E.2d 50 (2003), 2003 WL 554512. [S.A. 53-57].

---

[1] "It has long been the practice in this Commonwealth that a judge, after a plea of guilty or a conviction may order that the conviction be placed on file." *Commonwealth v. Delgado*, 367 Mass. 432, 437-438, 326 N.E.2d 716, 719 (1975). The effect of placing a conviction or guilty plea on file is that no appeal may be taken because the judgment is not complete in a criminal case until a sentence is imposed. *Id.*

[2] A motion that is not acted upon is treated as denied. *Commonwealth v. Reddick*, 439 Mass. 1001, 1001, 785 N.E.2d 676, 677 (2003).

[3] Nothing in the state court record explains this extraordinary delay. What the record does reflect is the petitioner's constant and repeated challenges to his convictions including the appointment of three different lawyers, the latest of whom represented him in the Appeals Court, and the filing of five additional motions for a new trial.

3

The petitioner filed his application for further appellate review ("ALOFAR") in the Supreme Judicial Court on March 18, 2003. [S.A. 58-78]. In his ALOFAR, he pressed four claims of ineffective assistance of trial counsel, one claim of ineffective assistance of appellate counsel, and one claim that the trial judge should have recused himself. Specifically, the petitioner claimed that trial counsel failed to: 1) satisfy his promise, made during opening statement, to present alibi witnesses; 2) object to testimony from the physician who examined the victim immediately after the rape, indicating that sperm was present in her vagina; 3) conduct additional forensic testing; and 4) seek dismissal of the rape indictment due to the loss of the rape kit. [S.A. 68-75]. The petitioner also claimed to have received constitutionally deficient counsel on direct appeal because that attorney also failed to raise these issues. [S.A. 75-76]. Finally, the petitioner claimed the trial judge should have recused himself because he had represented the petitioner in a previous sexual assault case prior to his appointment to the bench. [S.A. 76-77].

The Supreme Judicial Court denied the petitioner's ALOFAR on April 30, 2003. *See Commonwealth v. Tavares*, 439 Mass. 1105, 787 NE.2d 1059 (2003). [S.A. 79]. The petitioner filed his habeas corpus petition in this Court on April 26, 2004.[4]

## STATEMENT OF FACTS

The state court's findings of fact are entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). This presumption of correctness extends to factual determinations made by both state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35

---

[4] The respondent treats the operative date of the petitioner's filing as the date he filed his original habeas petition, rather than the date he filed his petition that conforms with 28 U.S.C. § 2254 Rule 2.

4

(1st Cir. 2002), *cert. denied*, 537 U.S. 1236 (2003), as well as to any factual findings implicit in the state courts' rulings. *See, e.g., Parke v. Raley*, 506 U.S. 20, 35 (1992); *Flores v. Marshall*, 53 F. Supp. 2d 509, 514 (D. Mass. 1999).

The Appeals Court found the following facts with respect to the petitioner's convictions:

About 4:00 A.M. on May 26, 1983, a truck driver on his way to work in Acushnet saw a young woman staggering in the middle of New Plainville Road. Her clothes were wet and torn; her shirt was undone; her face was bloody; "she was really beat up"; she had difficulty speaking. The driver placed her in his truck (she was unable to climb in on her own) and brought her to a New Bedford police station. The victim was then taken to the emergency room of St. Luke's hospital. Because of the extent of her injuries, she was later transferred to Massachusetts Eye and Ear Infirmary.

*Tavares,* 27 Mass. App. Ct. at 638, 541 N.E.2d at 579.

The Appeals Court summarized the victim's extensive injuries when the police first went to visit her in the hospital: "Her jaw and cheek bones were fractured; all her bottom teeth were gone; she had a tube in her mouth; and she could not talk. She could see with one eye. Her only method of communication was to write notes." *Id.* at 639, 541 N.E.2d at 579.[5]

## ARGUMENT

Since Tavares's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), this Court's review is governed by that act. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

[5] The petitioner does not appear to challenge these, or any of the Appeals Court's factual findings.

5

Supreme Court of the United States.'  28 U.S.C. § 2254(d)(1)."  *Brown v. Payton*, 544 U.S. ___,

125 S. Ct. 1432, 1438 (2005).

"A state-court decision is contrary to [the Supreme Court's] clearly established

precedents if it applied a rule that contradicts the governing law set forth in [Supreme Court]

cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the

Supreme Court] but reaches a different result.  *Williams v. Taylor*, [529 U.S. 362 (2000)]; *Early

v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  A state court decision involves an unreasonable

application of [the Supreme] Court's precedents if the state court applies [the] Court's precedents

to the facts in an objectively unreasonable manner.  *Williams v. Taylor*, [529 U.S.] at 405;

*Woodsford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam)."  *Brown*, 125 S. Ct. at 1438-

1439.

There is no bright line rule as to what constitutes an "objectively unreasonable"

application of established Supreme Court precedent.  *Williams*, 529 U.S. at 410.  As the *Williams*

decision makes clear, however, an unreasonable state-court determination is not the equivalent of

an incorrect one.  *Id.*

> Indeed, because Congress used the word "unreasonable" . . . , and not words like
> "erroneous" or "incorrect," a federal habeas court "may not issue the writ simply
> because the court concludes in its independent judgment that the relevant state-
> court decision applied clearly established federal law erroneously or incorrectly.
> Rather, that application must also be unreasonable.

*Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir.) (quoting *Williams*, 529 U.S. at 411), *cert. denied*,

534 U.S. 925 (2001).  *See also Kibbe v. DuBois*, 269 F.3d 26, 35 (1st Cir. 2001), *cert. denied*,

535 U.S. 960 (2002) (under AEDPA's "broad objective standard, a federal court cannot grant

6

habeas relief simply because it disagrees with or finds error in the state court's application of federal law").

In his habeas petition, and in his memorandum in support, the petitioner raises six grounds for relief. These claims consist of four claims of ineffective assistance of trial counsel; viz., 1) failure to satisfy his promise, made during opening statement, to present alibi witnesses; 2) failure to object to testimony from the physician who examined the victim immediately after the rape, indicating that sperm was present in her vagina; 3) failure to conduct additional forensic testing; and 4) failure to seek dismissal of the rape indictment due to the loss of the rape kit. *See* Pet. ¶ 12(A); Pet. Mem. at 13-29. The petitioner also claims to have received constitutionally deficient counsel on direct appeal because that attorney also failed to raise these issues. *See* Pet. ¶ 12(B); Pet. Mem. at 29-32. Finally, the petitioner claims the trial judge should have recused himself because he had represented the petitioner in a previous sexual assault case prior to his appointment to the bench. *See* Pet. ¶ 12(C); Pet. Mem. at 33-36. Although he cites Supreme Court and other pertinent federal precedent in his memorandum, he uses this authority to establish the applicable rule of law. In not one instance does he explain how the decision of the Massachusetts Appeals Court contravened this precedent or the underlying rules they articulate. *See* Pet. Mem. at 14-15. His failure to do so mandates dismissal of his petition. 28 U.S.C. § 2254(d)(1). Nevertheless, for the sake of completeness, the respondent addresses the petitioner's six claims seriatim.

7

I.    THE PETITIONER'S TRIAL COUNSEL RENDERED EFFECTIVE ASSISTANCE
      THROUGHOUT THE PROCEEDINGS.

      A.    Declining to Call Witnesses Who Refused To Testify At The Eleventh Hour Was
            Not Unreasonable.

In his opening statement, defense counsel told the jury:

> The defendant is going to call people to the witness stand that are going to tell you
> where he was at approximately 11, 10 to 11 P.M.; and basically the facts in this
> case, up to a certain point, you're going to hear from all the witnesses are the
> same. Things change when we get to a certain point in time, and the defendant is
> going to call witnesses for you that will indicate for you and tell you where he was
> at that point in time and where people went and what people did.

*Tavares*, 2003 WL 554512 at *1. Ultimately, counsel opted against calling these witnesses. The

petitioner claims that his counsel's decision not to call these witnesses amounted to

constitutionally ineffective assistance of counsel. *See* Pet. Mem. at 13-17. Under the

circumstances of this case, however, the decision was reasonable and indeed, forced upon him by

events outside of his control.

       "A convicted defendant's claim that counsel's assistance was so defective as to require

reversal of a conviction or death sentence has two components. First, the defendant must show

that counsel's performance was deficient. This requires showing that counsel made errors so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the defendant

of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot

be said that the conviction . . . resulted from a breakdown in the adversary process that renders

the result unreliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To avoid the shoals

8

of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993) (citation omitted).

Here, as the Appeals Court found, "Before presenting the defendant's case, defense counsel advised the judge that his alibi witnesses were unwilling to testify and one claimed that he would take the Fifth Amendment if called to testify." *Tavares*, 2003 WL 554512 at *1 (Tr. 5: 3-4).[6] The Court also found that "there is nothing in this record that suggests that defense counsel's statement in his opening statement was the product of inattention, inadequate preparation, or incompetency. Rather, his failure to present those witnesses was apparently a decision forced upon him by events over which he had no control and could not anticipate." *Id.* (citations omitted).

Unable to challenge these findings, the defendant attempts to draw his case within the purview of *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988) and *United States v. Gonzalez-Maldonado*, 115 F.3d 9 (1st Cir. 1997). His attempt misses the mark, however. In *Anderson*, "defense counsel, in his opening at the close of the Commonwealth's case, told the jury that he would call a psychiatrist and a psychologist" to mitigate against a first-degree murder verdict. 858 F.3d at 17. "Nonetheless, the day after his opening, counsel rested his case on the basis of lay witnesses only, without calling the doctors. *Id.* As a result, the Court held, "the jurors'

---

[6] Specifically, counsel explained: "Your Honor, for the record, over the weekend, the defense has spoken to several witnesses, including a Cloris Johnson of Nantucket, a Robert Pimental of New Bedford, a Carl Fernandes of New Bedford, a Robert Sylvia of New Bedford, and several other witnesses who we had intended to call today at trial, including Bobby Pina, who was here on a habe and got sick on Friday and had to be taken back to the prison.

"After speaking with those witnesses, it has become apparent that those parties which I've just mentioned do not want to testify in this case. Specifically, Mr. Pina is going to take the Fifth Amendment if I put him on the witness stand" (Tr. 5: 3-4).

9

conclusion would remain that impartial experts -- the most qualified witnesses -- would not
testify as counsel had said they would." *Id.* In contrast to this case, counsel in *Anderson* was not
presented with lay witnesses who had changed their minds about testifying. These facts simply
do not invite comparison to *Anderson*.

Similarly, in *Gonzalez-Maldonado*, defense counsel "promised the jury that he would
produce a psychiatrist who would testify that" a prosecution witness had a mental condition that
made him prone to hyperbole. 115 F.3d at 14. Upon considering counsel's failure to call the
psychiatrist, the Court held, "If the defense fails to produce promised expert testimony that is
critical to the defense strategy, a danger arises that the jury will presume that the expert is
unwilling to testify and the defense is flawed." *Id.* at 15. The defendant's attempt to analogize
*Gonzalez-Maldonado* to his case is also unavailing. This is so because, unlike expert witnesses
who issue reports and arrive at opinions based on science, the witnesses in this case simply
changed their minds about testifying in the petitioner's favor. This, they were entitled to do, and
defense counsel cannot be faulted for failing to anticipate their eleventh-hour change of heart.
Because the petitioner's trial counsel rendered competent assistance, habeas corpus relief does
not lie here.

B.    It Was Not Ineffective To Fail To Object To Testimony From The Victim's
      Treating Physician Indicating That Sperm Was Present In The Victim's Vagina
      Because It Was Cumulative Of Other Properly Admitted Evidence And Therefore
      Could Not Have Prejudiced The Petitioner.

At the petitioner's trial, the physician who treated the victim testified that sperm was
present in her vagina. *Tavares*, 2003 WL 554512 at *2. The defendant complains that his
counsel's failure to object to this testimony amounted to ineffective assistance because, he

10

argues, "this hearsay statement was the only testimony suggesting that a rape occurred." Pet. Mem. at 17-18. This assertion is flatly contradicted by the Appeals Court, and by the underlying record. As the Appeals Court found, "this evidence was part of the hospital record which had been marked as an exhibit and, thus, was simply cumulative of otherwise admissible evidence." *Tavares*, 2003 WL 554512 at *2. Since the evidence was cumulative, the petitioner's argument that his counsel was constitutionally ineffective for failing to object is plainly wrong. *See United States v. Tuesta-Toro*, 29 F.3d 771, 776 (1st Cir. 1994), *cert. denied*, 513 U.S. 1132 (1995) (admission of cumulative evidence not likely to sway the jury).

> In addition:

> The victim had testified that when she resisted the defendant's sexual overtures, the defendant began to hit her. While she had no memory of sexual intercourse, she had testified that when she regained consciousness, she had no underpants on and her blouse and her bra had been torn apart, which was indicative of a sexual assault.

*Tavares*, 2003 WL 554512 at *2. Thus, the physician's testimony was hardly the only evidence that the petitioner raped his victim.

Further, the Appeals Court found that the petitioner's "counsel was effective in neutralizing the physician's testimony by the witness's acknowledgment that the sperm could have been present for up to a week in the victim's vagina." *Id.* In light of these findings, which the petitioner does not, and cannot, dispute, there is no basis to conclude that the petitioner was prejudiced by the admission of the physician's testimony. Absent prejudice, there is no colorable claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Consequently, the petitioner is not entitled to habeas corpus relief on this ground. 28 U.S.C. § 2254(a).

11

C.    Counsel's Decision Not To Seek Independent Forensic Testing Of The Victim's
Clothing and Of The Vaginal Samples Was Entirely Reasonable Where There
Was A Legitimate Concern That Further Testing Would Inculpate The Petitioner
And Where, Under The Circumstances Of The Case, It Was Unlikely That The
Presence Or Absence Of Trace Elements On The Victim's Clothing Would Have
Assisted The Jury In Excluding The Defendant As The Perpetrator.

The defendant next argues that his counsel was ineffective for failing to seek independent

testing of the victim's clothing and failing to conduct further tests on the vaginal sample taken

from the victim. Pet. Mem. at 22-24. He cites no statute or case law in support of his theory.

This alone suffices to deny him habeas corpus relief on this claim. 28 U.S.C. § 2254(a) (habeas

relief may be granted only where petitioner demonstrates he is in custody pursuant in violation of

the Constitution or laws or treaties of the United States).

In addition, the petitioner cannot show that his counsel's failure to pursue this line of

defense was anything other than reasonable. *See McGill*, 11 F.3d at 227. The Appeals Court

found that, contrary to the petitioner's assertions, "two witnesses acknowledged that the victim

left the bar with the [petitioner]; the victim identified the [petitioner] as her attacker; and the

[petitioner] was found hiding from the police at the time of his arrest, [and] defense counsel was

apprised that there was a strong possibility that further testing (the results of which he would be

required to turn over to the Commonwealth) would inculpate rather than exculpate the

defendant." *See Tavares*, 2003 WL 554512 at *2 (citing *Trigones v. Hall*, 115 F. Supp. 2d 158,

170 (D. Mass. 2000)). Thus, counsel's decision not to pursue this defense was entirely

reasonable, and likely assisted in the petitioner's defense.

Finally, the Appeals Court found, and the petitioner does not -- and cannot -- contest, "the

[petitioner] has made no showing that better work might have accomplished something material

12

for the [petitioner]. Given the fact that it was uncontroverted that the [petitioner] and the victim spent part of the evening in each other's company and given the fact that when the victim regained consciousness, she was lying in muddy water naked from the waist down, her underpants missing and her jeans lying nearby in some water, it was unlikely that the presence or absence of any trace elements from the [petitioner] on the victim's clothing would have aided the fact finder in excluding the [petitioner] as the perpetrator of the crime." *Tavares*, 2003 WL 554512 at *3. The petitioner cannot show he that was prejudiced. Consequently, he lacks a legitimate claim of ineffective assistance of counsel, and for habeas corpus relief.

II.    THE PETITIONER'S APPELLATE COUNSEL WAS NOT INEFFECTIVE FOR
        FAILING TO RAISE THESE MERITLESS CLAIMS.

The petitioner also complains that his appellate counsel on his direct appeal rendered constitutionally ineffective assistance for failing to raise any of the proceeding claims. *See* Pet. Mem. at 29-32. As with trial counsel, the standard enunciated in *Strickland* governs claims of ineffective assistance against appellate counsel. *Ramirez-Burgos v. United States*, 313 F.3d 23, 28 (1st Cir. 2002), *cert. denied*, 537 U.S. 1167 (2003). Thus, to prevail, the petitioner must show that he was prejudiced by counsel's failure to raise these claims. *Strickland*, 466 U.S. at 687. The impossibility of the petitioner satisfying this showing is demonstrated by the fact that the Appeals Court ultimately did review, and reject, each of these claims.[7]  Because the petitioner

---

[7] It is important to note that although these claims were brought before the Appeals Court on a collateral appeal, because they raised claims of ineffective assistance of counsel, the standard of review was no less favorable to the petitioner than it would have been had the claims been raised on direct appeal. *Commonwealth v. Randolph*, 438 Mass. 290, 295-296, 780 N.E.2d 58, 65 (2002) (ineffective assistance of counsel standard of review equivalent to substantial risk of a miscarriage of justice standard used for waived claims).

13

was not prejudiced by his appellate counsel's failure to raise these claims on direct appeal,

habeas corpus relief does not lie here.

III.    THE PETITIONER HAS PROCEDURALLY DEFAULTED HIS CLAIM THAT THE
        TRIAL JUDGE WAS REQUIRED TO RECUSE HIMSELF, AND, IN ANY EVENT,
        NO ABUSE OF DISCRETION RESULTED FROM THE JUDGE'S DECISION TO
        HEAR THE PETITIONER'S CASE.

        The petitioner's final claim is that the trial judge should have recused himself because he

had represented the petitioner in a sexual assault case some fifteen years earlier.  Pet. Mem. at

33-36; *Tavares*, 2003 WL 554512 at *4.  However, the petitioner acknowledges that he did not

raise this claim until he filed his first motion for a new trial, which occurred after his direct

appeal.  Pet. Mem. at 33.  As a result, the Appeals Court held that the petitioner had defaulted

this claim, because he did not raise it in his direct appeal.  *Tavares*, 2003 WL 554512 at *4

("because the defendant could have raised this issue in his direct appeal, we consider the issue

waived").  Consequently, this claim is procedurally defaulted in this federal habeas court.  *See*

*Moore v. Ponte*, 186 F.3d 26, 31-32 (1st Cir.) (citing *Burks v. DuBois*, 55 F.3d 712, 716 (1st Cir.

1995)), cert. denied, 528 U.S. 1053 (1999).

        The petitioner's procedural default functions as an independent and adequate state ground

for the legality of his conviction.  *Id.* at 32.  As such, federal habeas review of this claim is barred

unless the petitioner can demonstrate "cause" for the default and "actual prejudice" as a result of

the alleged violation of federal law, or demonstrate that "failure to consider the claims will result

in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991);

*Moore*, 186 F.3d at 32.  Here, the petitioner has made no attempt to demonstrate "cause and

prejudice" that would permit habeas review despite his procedural default, nor has he even

14

alleged the likelihood of a "fundamental miscarriage of justice" -- the conviction of an innocent person -- if this claim is not entertained.  *See Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  Failing these requirements, the petitioner's claim must be denied.  *Coleman*, 501 U.S. at 750.

Further, the Appeals Court decided this issue on state law grounds.  *See Tavares*, 2003 WL 554512 at *4  (the question of recusal is left to the discretion of the judge).  Errors of state law, such as the one the petitioner asserts here, do not provide a basis for federal habeas corpus relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Consequently, this federal Court lacks jurisdiction to hear this state-law claim.

Finally, even if this were a cognizable federal claim, the same "abuse of discretion" standard that the Appeals Court applied, would apply here as well.  *See In Re: Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001) .  As the Appeals Court found, "[i]t is to be assumed that, by denying the motion [to recuse], the judge was satisfied that his representation of the defendant fifteen years earlier in an unrelated proceeding posed no risk of prejudice, bias or ground for recusal." *Tavares*, 2003 WL 554512 at *4. "In addition, the record before us does not hint of any unfairness to the [petitioner] or any prejudice by the judge against the [petitioner]." *Id.*  In short, there was no basis, and the petitioner provides none in his memorandum, to suggest that the judge's decision to adjudicate the case constituted an abuse of discretion or, more to the point, violated the petitioner's federal constitutional rights.

15

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for habeas corpus relief.

Respectfully submitted,

THOMAS F. REILLY
Attorney General

/s/ Daniel I. Smulow
Daniel I. Smulow, BBO # 641668
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2949

Date: May 27, 2005

### Certificate of Service

I hereby certify that a true copy of the above document was served on Edward Tavares, *pro se*, N.C.C.I. - Gardner, P.O. Box 466, 500 Colony Road, Gardner, MA 01440, by first class mail, postage prepaid, on May 27, 2005.

/s/ Daniel I. Smulow