**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

)
)
EDWARD TAVARES, JR.,            )
      Petitioner,            )
vs.                                           )         **CIVIL ACTION**
                          )         **NO. 04-40059-FDS**
STEVEN O'BRIEN,                  )
      Respondent            )
)
)

## REPORT AND RECOMMENDATION
### March 7, 2007

**HILLMAN, M.J.**

### Nature Of The Proceeding

This matter was referred to Chief Magistrate Judge Swartwood by Order of Reference dated February 5, 2005, for findings and recommendations pursuant to 28 U.S.C. § 2254 on the merits of Edward Tavares, Jr.'s Petition for Writ of Habeas Corpus, as amended (Docket No. 10) and reassigned to me on February 16, 2006 (*see* Docket No. 25).

### Nature Of The Case

Petitioner has filed a Petition for Writ of Habeas Corpus (Docket No. 10)(Petition)[1] by a person in state custody in accordance with 28 U.S.C. §2254. Petitioner seeks habeas relief on the grounds that his federal constitutional rights were violated as the result of:

---

[1]Petitioner's original filing (Docket No. 1)(Original Petition) did not meet the requirements of the Rules Governing Habeas Corpus Cases Under Section 2254 and he was ordered to re-file his pleading in the proper form.

A.    Ground One: His having been denied effective assistance of counsel at trial;

B.    Ground Two: Appellate counsel's failure to raise the issue of ineffectiveness of trial counsel; and

C.    Ground Three: The trial judge's failure to recuse himself from the trial and the trial judge's denial of his motion for new trial (for failure to recuse) without making detailed findings.

## Facts

1.    Petitioner was convicted of aggravated rape and assault with intent to kill. *Commonwealth v. Tavares*, No. 01-P-540, slip op. at 1 (Mass.Ct.App. Feb. 27, 2003)(unpublished), a copy of which is attached to the *Exhibits to Original Petition (*Docket No. 1)(*Exs. To Orig. Pet.*), at pp. T.E. 58-T.E. 66 (*Tavares,* slip op.).

2.    Petitioner's direct appeal of his convictions was denied. *See Commonwealth v. Tavares*, 25 Mass.App.Ct. 637, 541 N.E.2d 578 (1989).[2]  Thereafter, Petitioner filed a motion for new trial, *see Exs. To Orig. Pet.*, at pp. T.E. 68- T.E. 81, which was denied by endorsement and without specific findings. *Tavares*, slip op. at 1.

3.    Petitioner appealed the denial of his motion for a new trial to the Massachusetts Appeals Court ("MAC"). In his appeal, Petitioner asserted the following claims: (1) he had received ineffective assistance from trial counsel as the result of a) counsel's failure to call alibi witnesses, as he told the jury he would in his opening statement, b) counsel's failure to object to

---

[2]In his direct appeal, Petitioner asserted that: the integrity of the grand jury proceedings was impaired by the withholding of possibly exculpatory evidence; the decision to charge him with aggravated rape after he defaulted was vindictive; there was insufficient evidence to sustain the convictions; and there was prosecutorial misconduct in closing argument. *Tavares,* 27 Mass. App.Ct. at 638,541 N.E.2d at 579. None of these grounds for relief are raised in the Petition.

2

a physician's testimony that sperm was found in the victim's vagina, c) counsel's failure to seek additional forensic testing of the victim's clothing and the vaginal sample obtained from her, and d) counsel's failure to seek sanctions against the Commonwealth for losing evidence (the rape kit); (2) he received ineffective assistance from appellate counsel as the result of appellate counsel's failure to raise the issue of his trial counsel's performance in his direct appeal; and (3) his due process right to a fair trial was violated because the trial judge, who had previously represented Petitioner in a sexual assault case, should have recused himself. *See generally, Tavares,* slip op.

4.    The MAC affirmed the denial of Petitioner's motion for new trial. In doing so, the MAC ruled that Petitioner had not received ineffective assistance of counsel at trial. As to Petitioner's claim that his counsel failed to call alibi witnesses as promised in his opening statement, the MAC found that such failure was due to circumstances beyond counsel's control and anticipation and, in any event, given the trial judge's instructions to the jury to consider the testimony which was elicited at trial and ignore any witnesses who were not present, there was no prejudice to the Petitioner. *Id.*, at 2-3. The MAC further found that the physician's testimony that sperm was found in the victim's vagina was cumulative of testimony already in the record and therefore, counsel did not err by failing to object to such evidence. Additionally, the MAC found that counsel was not ineffective for failing to object to such evidence because he was able to neutralize the physician's testimony and that there was other evidence in the record which established the victim had been raped. *Id.*, at 3-4. With respect to counsel's failure to conduct additional forensic testing, the MAC concluded that such failure was a tactical decision which was not unreasonable since, given the other evidence against the Petitioner as well as the

3

condition of the victim when she was found, it is unlikely that such testing would have exculpated the Petitioner or excluded him from being the perpetrator of the crime. *Id.*, at 4-6.

5. The MAC found that counsel's failure to seek dismissal of the charges against him as the result of the Commonwealth's having lost the rape kit was not error since such a motion would have been denied given that there was no evidence that the rape kit was lost due to egregious misconduct of the Commonwealth. Additionally, the MAC found that there was no error because (1) after objection by counsel, certain evidence pertaining too the rape kit was excluded, (2) part of the evidence which was admitted, the vaginal swabbing, was not lost, and (3) because the evidence which was lost would have been duplicative of other lab evidence which was properly admitted. *Id.*, at 6-7.

6. Since the MAC concluded that trial counsel's performance was not deficient, it concluded, *a fortiori*, his appellate counsel was not ineffective for failing to raise the issue of trial counsel's performance in Petitioner's direct appeal. *Id.*, at 7-8.

7. As to Petitioner's claim that the trial judge should have recused himself, the MAC found that Petitioner had waived this issue by not raising it in his direct appeal, and even if this claim were reviewed on the merits, the decision of whether to recuse himself was left to the discretion of the trial judge and his failure to do so under the circumstances was not error. *Id.*, at 8. Additionally, although the court noted that it would have been preferable for the trial judge to make detailed findings on this issue, it is assumed that by denying the motion, the trial judge was satisfied that his representation of the Petitioner fifteen years earlier in an unrelated matter did not pose any risk of prejudice, bias or ground for recusal and the court did not perceive any error in the denial. *Id.*

4

8.     Mr. Tavares then filed an Application For Leave To Obtain Further Appellate

Review with the Massachusetts Supreme Judicial Court ("SJC"), which was denied. *See Exs. To*

*Orig. Pet.*, at p. T.E. 67.

## Discussion

### Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No., 104-132,

110 Stat. 1214 (1996) sets forth the standard of review to be applied by a federal court

considering a state prisoner's petition for habeas corpus relief. Under the AEDPA, a federal

court will grant such relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of
> clearly established Federal law, as determined by the Supreme Court of the United States;
> or (2) resulted in a decision that was based on an unreasonable determination of the facts
> in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d).

"'Under the "contrary to" clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas

court may grant the writ if the state court identifies the correct governing legal principles from

[the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case.'" *Dolinger v. Hall*, 302 F.3d 5, 9 (1st Cir. 2002)(quoting *Williams v. Taylor,* 529

U.S. 362, 412-13, 120 S.Ct. 1495, 1523 (2000))(alterations in original). The latter determination

"must be decided primarily on the basis of Supreme Court holdings that were clearly established

5

at the time of the court proceedings. Nevertheless, factually similar cases from the lower federal courts may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns". *Rashad v. Walsh,* 300 F.3d 27, 35 (1ˢᵗ Cir. 2002)(internal citation omitted). Additionally, the "unreasonable application" prong of the AEDPA "does not empower a habeas corpus court to grant the writ merely because it disagrees with the state court's decision, or because, left to its own devices, it would have reached a different result. Rather, for the writ to issue, the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *O'Brien v. DuBois,* 145 F.3d 16, 25 (1ˢᵗ Cir. 1998). To the extent a petitioner argues that the state court made erroneous factual determinations: "[t]he AEDPA allows relief from a state court judgment if that judgment is based on an unreasonable determination of the facts. Under this standard, 'the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary.' Unless the petitioner can carry this heavy burden, a federal habeas court must credit the state court's findings of fact ..." *Rashad,* 300 F.3d at 35 (internal citations omitted)(quoting *Ouber v. Guarino,* 293 f.3d 19, 27 (1ˢᵗ Cir. 2002)).

## Whether Mr. Tavares Is Entitled To Habeas Relief With Respect To Ground One of His Petition (Ineffective Assistance of Counsel).

Petitioner has asserted the following ineffective assistance of counsel claims in Ground One of his Petition: (1) counsel's failure to call alibi witnesses, as he told the jury he would in his opening statement, (2) counsel's failure to object to hearsay testimony concerning lost evidence and thereafter emphasizing the inadmissible testimony during cross-examination, (3) counsel's

failure to seek independent examination and forensic testing, and (4) counsel's failure to object to the admission of lost evidence and testimony concerning such evidence.

Counsel's Failure To Call Alibi Witnesses

Mr. Tavares argued to the MAC that he received ineffective assistance of counsel as the result of his trial lawyer failing to call alibi witnesses after having told the jury in his opening statement that he would produce one or more witnesses who would testify to Mr. Tavares's whereabouts at the time of the assault. Initially, I will address Petitioner's contention that the MAC failed to address the federal nature of his claim and, therefore, that this Court should review this claim *de novo*.

Whether This Court Should Conduct A De Novo Review Of This Claim

Where a petitioner has asserted a claim in his habeas petition which he raised as a federal constitutional claim before the state court, but which was resolved by the court on state law grounds (without addressing the federal constitutional issue), this Court will review such claim *de novo. See Fortini v. Murphy*, 257 F.3d 39 (1ˢᵗ Cir. 2001)(where state court never addresses federal question, deferential standards required by AEDPA do not apply and federal court will address issue *de novo*). However, where the state court in making its determination cites to a state law case which itself cites to the federal constitution and Supreme Court precedent, then the state court has addressed the federal claim on the merits. *Cf. Teti v. Dennehy*, Civ. Act. No. 05-10234-RWZ, 2006 WL 2161882 (D.Mass. Aug. 1, 2006). For the reasons set forth below, I find that the MAC addressed the federal nature of this claim and therefore, that the AEDPA's deferential standard of review applies.

The Supreme Court has held that to determine whether a defendant received competent representation for purposes of the Sixth Amendment, the court must examine trial counsel's performance and determine whether counsel's deficient performance deprived the defendant of a fair trial . *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In addressing Petitioner's ineffective assistance of counsel claim, the MAC addressed both trial counsel's performance and any prejudice to the Petitioner. Additionally, the MAC cited to *Commonwealth v. Nardone*, 406 Mass. 123, 546 N.E.2d 359 (1989), a case in which the SJC applied *Strickland* in analyzing an ineffective assistance of counsel claim involving issues similar to the one raised by the Petitioner.[3] Since the MAC applied a *Strickland* analysis to this claim, I find that it addressed the merits Petitioner's Sixth Amendment ineffective assistance of counsel claim. Since I find that the MAC applied the correct federal legal standard to this claim, the deferential standard of review set forth in the AEDPA applies and Petitioner must establish that the MAC's decision was an unreasonable application of that standard.

Whether The MAC's Decision Was An Unreasonable Application Of *Strickland*

In his opening statement, counsel for the Petitioner told the jury that:

[t]he defendant is going to call people to the witness stand that are going to tell you where he was at approximately 11, 10 to 11 pm; and basically the facts in this case, up to a certain point, you're going to hear from all the witnesses are the same. Things change and when we get to a certain point in time, and the defendant is going to call witnesses for you that will indicate for you and tell you where he was at that point in time and where people went and what people did.

---

[3]In *Nardone*, the SJC applied both *Strickland* and *Commonwealth v. Saferian*, 366 Mass. 89, 315 N.E. 2d 878 (1974), which is the seminal case setting forth the standard for determining whether a defendant has received competent representation for purposes of Massachusetts law. The First Circuit has recently reiterated that the *Saferian* standard is the "functional equivalent" of the familiar standard for analyzing Sixth Amendment ineffective assistance of counsel claims set forth in *Strickland*.

*Tavares,* slip op. at 2 (quoting the Trial Transcript, Vol. 2 at pp.54-55).[4]

In making its ruling, the MAC found that the failure of Petitioner's counsel to call any alibi witnesses was not due to inadequate preparation, incompetency of counsel or inattention. Rather, the MAC found that: counsel informed the trial judge at the start of the trial that he was unable to locate Petitioner's girlfriend (who Petitioner claimed he was with at the time of the alleged assault); and prior to presenting Petitioner's defense, Petitioner's counsel told the trial judge that none of the alibi witnesses was willing to testify and that one witness would invoke his Fifth Amendment Right not to testify. Under these circumstances, the MAC found that counsel's failure to call any alibi witnesses at trial was "forced upon him by events over which he had no control and could not anticipate" and did not constitute ineffective assistance. *Tavares,* slip op., at 2-3. In other words, the MAC found that Petitioner failed to satisfy the first prong of *Strickland.* As to the second prong of *Strickland,* the MAC further found that the trial judge's admonition to the jury to " 'forget who didn't come in and consider those that did'", mooted any prejudice to the Petitioner. *Id.,* at 3.

The Supreme Court has never specifically addressed the circumstances under which counsel's failure to fulfill a promise made in an opening statement to call alibi witnesses violates the *Strickland* standard. Circuit courts that have addressed this issue have reached different results. *See Williams v. Bowersox,* 340 F.3d 667, 671-672 (8th Cir. 2003) and cases cited therein.

---

[4]Given the vagueness of counsel's comments as to Petitioner's whereabouts (*i.e.,* the fact that he did not provide any specifics concerning an alibi) and the fact that Petitioner admits that he was with the victim for a portion of the evening, one could argue that counsel's opening statement did not expressly promise that the Petitioner would call witnesses whose testimony would establish that he could not have committed the crime. Nevertheless, for purposes of this discussion, I will assume that counsel in his opening statement promised that the Petitioner would produce alibi witnesses and then failed to do so.

The First Circuit has stated because the Supreme Court has not "adopt[ed] more particularized guidelines for ineffective assistance of counsel claims, it is helpful to examine precedents from lower federal courts to determine how the general [*Strickland*] standard applies to a particular set of facts." *Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002). While under the AEDPA such precedents are not binding on state courts, they are instructive for purposes of determining the proper application of *Strickland* in factually similar cases. *Id.*

In *Ouber*, the petitioner was tried three times before being convicted by a Massachusetts jury of a drug trafficking charge. The first two trials, at which petitioner testified, ended in mistrials when the jury could not reach a verdict. At the third trial, petitioner's counsel, in his opening statement, promised the jury on four separate occasions that the petitioner would testify and he repeatedly emphasized the importance of the petitioner's testimony. *Id.*, at 21-23. However, during the trial, petitioner's counsel convinced her not to testify. The petitioner was convicted and her conviction was affirmed on appeal. The petitioner then filed a petition for a writ of habeas corpus under Section 2254, which was granted by the district court. On appeal, the First Circuit, applying *Strickland*, focused on counsel's failure to deliver to the jury on his promise that petitioner would testify on her own behalf. The Court concluded that given that nothing unexpected occurred in the third trial which would have required a mid-trial change in strategy, it was constitutional error for defense counsel to promise that petitioner would testify and then fail to put her on the stand; the state court's determination to the contrary, was held to be objectively unreasonable. *Id.,* at 27-29. As to the second prong of *Strickland*, the First Circuit reviewed prior Supreme Court precedent and concluded that prejudice should not be presumed where counsel breaks a promise to the jury. Instead, the court must review the record

10

on the whole and determine whether counsel's error was prejudicial, *i.e.*, likely affected the outcome of the trial. *Id.*, at 32-33. The First Circuit agreed with the district court that the state court's determination to the contrary was objectively unreasonable. *Id.*, at 34.

In *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988), the First Circuit, applying the *Strickland* standard *de novo*[5] held that a state court prisoner was entitled to habeas corpus relief where his counsel, after telling the jury in his opening statement that they would testify, failed to call two expert witnesses, a psychologist and a psychiatrist, who would have opined as to petitioner's mental state at the time of the offenses. The court pointed out that counsel's error was magnified by the following factors: although he failed to call the expert witnesses, counsel continued to assert his client's mental condition as his principle defense; it was only a two day trial and so the promise was broken soon after it was made; during voir dire, the jurors had been asked about their thoughts on psychiatric testimony; and in his closing argument, counsel further highlighted the issue by stating his reasons for not having called the promised experts to testify. The Court emphasized that it was not required to give any deference to the state court's findings.

The First Circuit has emphasized that "cases that premise a habeas writ on an unfulfilled promise during opening argument generally require [a degree of] specificity in the promise and [a degree of] contemporaneousness between the promise and jury deliberations." *Phoenix v. Matesanz*, 233 F.3d 77, 84 (1st Cir. 2000). In this case, Petitioner's counsel in his opening alluded to the fact that the defense would call witness who would testify as to where Petitioner was at certain times and what he did. Counsel did not specify the names of individuals

---

[5]This case pre-dated the enactment of the AEDPA and therefore, the federal court's review was *de novo* rather then the deferential standard required by the AEDPA.

who would be called as witnesses, nor did he give any specific details about what he expected

they would say concerning the nights events.  There is nothing in the record to suggest that

counsel made any further reference to potential alibi witnesses at any other time during the trial.

The First Circuit has made it clear in determining whether the state court's decision was

an unreasonable application of governing Supreme Court precedent, "if it is a close question

whether the state decision is in error, then the state decision cannot be an unreasonable

application ... 'some increment of incorrectness beyond error is required' ... The increment need

not necessarily be great, but it must be great enough to make the decision unreasonable in the

independent and objective judgment of the federal court". *McCambridge v. Hall*, 303 F.3d 24, 36

(1st Cir. 2002)(citation to quoted case and internal citations omitted).  Given the uncertainty in

the law concerning whether failure to call promised witnesses constitutes ineffective assistance

of counsel and considering the general nature of the promise made by Petitioner's counsel at an

early stage of the trial (*i.e,* well before the jury began it's deliberations), I cannot find that the

state court unreasonably applied clearly established federal law when it denied his claim. *See*

*Wishnefsky v. Meyers,* No. 4CV030417 2005 WL 1498502 (M.D.Pa.  June 22, 2005).

Counsel's Failure To Object To Hearsay Testimony Concerning Lost Evidence

Mr. Tavares asserts that his trial counsel was ineffective for failing to object to the

testimony of Dr. Barbieri, a gynecologist who had obtained evidence for the victim's rape kit,

that semen had been recovered from the victim.  Petitioner asserts that the testimony was

inadmissible since: (1) the rape kit had been lost prior to trial and (2) the doctor had not

performed the tests  and therefore, it was hearsay.  Petitioner further asserts that he was

prejudiced by Dr. Barbieri's testimony because there was no other evidence that a rape had

12

occurred. The MAC found that counsel had not erred by failing to object to Dr. Barbieri's
testimony because the evidence that sperm was present in the victim's vagina had come in as part
of the victim's hospital record (as permitted by state law[6]) and therefore, the testimony "was
simply cumulative of otherwise admissible evidence". *Tavares*, slip op., at 3-4. The MAC also
found that there was other evidence that a rape had occurred (the victim's testimony) and that his
lawyer had effectively neutralized Dr. Barbieri's testimony by getting him to admit that the sperm
could have been present in the victim for up to a week. *Id.*

The Supreme Court has held that a defendant's Sixth Amendment right to confront the
witnesses against him prohibits the prosecution from using "testimonial hearsay" evidence at
trial, however, "[h]earsay evidence that is nontestimonial is not subject to the Confrontation
Clause". *United States v. Ellis*, 460 F.3d 920, 923 (7th Cir. 2006)(citing *Davis v. Washington, ---*
U.S. —, 126 S.Ct. 2266 (2006)). Hospital records such as those introduced at Petitioner's trial
are nontestimonial and therefore, if they otherwise comply with the rules of evidence, may be
admitted at trial. *Id.,* at 923-26. Therefore, the MAC's finding that Petitioner's counsel was not
ineffective for failing to object to Dr. Barbieri's testimony concerning the presence of sperm in
the victim's vagina because that evidence had already been properly admitted and, second, that in
any event, there was no prejudice (since the evidence was cumulative), was not an unreasonable
application of *Strickland*.

---

[6]The Massachusetts Supreme Judicial Court has held that under Mass.Gen.L. c. 233, § 79, a victim's
hospital records, which indicate that sperm was present in her vagina, are admissible at a criminal rape trial.
*Commonwealth v Franks,* 359 Mass. 577, 270 N.E. 2d 837 (1971).

13

Counsel's Failure To Seek Additional Forensic Testimony Of The Victim's
Clothing And The Vaginal Sample Obtained From Her

Petitioner asserts that his counsel was ineffective because he failed to seek an
independent examination of the clothing worn by the victim and/or the forensic sample taken
from her. He argues that a number of tests could have been performed on the victim's clothing
and semen samples which could have excluded him. He further argues that he was prejudiced
because the semen test results were the only evidence that a rape had occurred.

In its analysis of this claim, the MAC noted that: (1) two witnesses testified that
Petitioner left the bar with the victim; (2) the victim had identified Petitioner as her attacker; (3)
the Petitioner was hiding from the police when he was found and arrested; and (4) further testing
could have inculpated rather than exculpated the Petitioner and all testing results would have had
to be turned over to the Commonwealth. *Tavares*, slip op., at 4-5. Given these factors, the MAC
found that it "was not unreasonable for [counsel] to rely on a strategy that would attack the
deficiencies in the Commonwealth's investigation and focus on the fact that the only testing done
by the Commonwealth did not necessarily link the [Petitioner] to the crime". *Id.* As to the
prejudice prong, the MAC found that because it was uncontroverted that Petitioner had spent
time with the victim that night, and given that when the victim became conscious she was lying
in muddy water, naked from the waste down, that her underpants were missing and that her jeans
were found in water, "it was unlikely that the presence or absence of any trace elements from the
[Petitioner] on the victim's clothing would have aided the fact finder in excluding [him] as the
perpetrator of the crime". *Id.,* at 6.

14

It is presumed that counsel's performance falls within a reasonable range of professional judgment. *See Knight v. Spencer,* 447 F.3d 6, 15 (1st Cir. 2006)(citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052). In this case, counsel chose to attack the veracity of the Commonwealth's tests, which were not conclusive, rather than to conduct independent tests. The MAC found that counsel's failure to conduct further testing was a tactical decision which was not manifestly unreasonable and therefore, did not constitute ineffective assistance of counsel. Under the circumstances, the SJC's conclusion that Petitioner's counsel made a reasonable tactical decision is not an unreasonable application of *Strickland.* The MAC also determined that given the state of the victim's clothing and the fact that her underpants were missing, any further testing was unlikely to aid the jury in excluding Petitioner as the rapist. The MAC's finding that Petitioner was not prejudiced was not an unreasonable application of the second prong of *Strickland.*

## Counsel's Failure To Seek Sanctions For Loss Of The Rape Kit

Petitioner argues that his counsel was ineffective because: (1) he failed to file a motion seeking sanctions against the Commonwealth as a result of the rape kit having been lost; and (2) failed to object to testimony concerning the presence of sperm, testing and the sperm certificate. The MAC denied Petitioner's claim. The MAC firsts addressed counsel's performance and noted that although counsel had not sought dismissal of the case because of the loss of the rape kit, he did seek to exclude evidence pertaining to the rape kit, including the report of the State Laboratory findings, and those findings were in fact excluded. *Tavares,* slip op., at 6. The MAC also found that dismissal of the indictment would not have been warranted because Petitioner failed to show that loss of the rape kit was due to egregious misconduct on the part of the Commonwealth. As to counsel's failure to object to Dr. Barbieri's testimony concerning the

15

laboratory test results which showed that sperm was present in the victim's vagina, the MAC

focused on whether Petitioner was prejudiced by such failure. Dr. Barbieri testified that he had

prepared a rape kit for the Massachusetts Eye and Ear Infirmary and had also made a vaginal

swabbing which was sent to the Massachusetts General Hospital Laboratory ("MGHL");

although the rape kit was lost after the test results were reported, the MGHL sample was not.

The MAC found that because the results of the MGHL sample were properly admitted into

evidence and because those results were duplicative of the rape kit evidence, Petitioner was not

prejudiced by his counsel's failure to seek exclusion all testimony about the rape kit or his failure

to seek to dismissal of the indictment. The MAC's determination that counsel's performance

was not deficient and that, in any event, Petitioner was not prejudiced was not an unreasonable

application of *Strickland*.

**Whether Mr. Tavares Is Entitled To Habeas Relief With Respect To Ground Two of His
Petition: Ineffective Assistance of Appellate Counsel.**

Petitioner asserts that his appellate counsel was ineffective for failing to raise the

ineffectiveness of trial counsel on direct appeal. In accordance with *Strickland*, Petitioner must

show not only that his appellate counsel was ineffective by failing to raise meritorious issues on

appeal, but also that he was prejudiced, *i.e.,* he would have prevailed on his appeal. Furthermore,

where appellate counsel has filed an appellate brief, such counsel "need not (and should not)

raise every nonfrivolous claim, but rather may select from among them in order to maximize the

likelihood of success on appeal ... . [W]hile it is ... possible to bring a *Strickland* claim based on

counsel's failure to raise a particular claim, ... it is difficult to demonstrate that counsel was

incompetent". *Smith v. Robbins*, 528 U.S. 259, 287, 120 S.Ct. 746 (2000).

16

Since I have already determined that Petitioner's claims of ineffective assistance of trial

counsel are without merit, appellate counsel's failure to raise them on direct appeal was neither

unreasonable or prejudicial. Therefore, this claim should be denied.

## Whether Mr. Tavares Is Entitled To Habeas Relief With Respect To Ground Three of His Petition: Trial Judge's Failure To Recuse

Petitioner asserts that the trial judge erred in denying his motion for new trial on the

grounds that the trial judge should have recused himself because when he was a practicing

attorney, he had represented Petitioner in a prior case which resulted in Petitioner being

convicted of sexual assault.[7] The representation took place fifteen years prior to Petitioner's trial

and Petitioner was a juvenile at the time (although the case was transferred to adult court).

Petitioner argues that his right to a fair trial was violated as a result of the trial judge's failing to

recuse himself because during the trial, there were many instances when the trial judge exercised

his discretion contrary to the Petitioner's interests and he may have done so because of his

knowledge of the prior case against Petitioner. Although Petitioner refers to numerous rulings

made against him by the trial judge, the only specific example which he addresses in his

memorandum in support of his Petition is the trial judge's discretion decision to impose a life

sentence on the rape charge. Petitioner also asserts that the trial judge's denial of his motion for

---

[7]In his submissions to this Court, including his Petition, Petitioner at times makes reference to two prior cases involving the trial judge. It is unclear whether he is alleging the trial judge represented him in two prior case involving a sexual assault and assault with intent to rape, one prior case involving two charges (sexual assault and assault with intent to rape) or one prior case of sexual assault while being aware of a second case (in which Petitioner assaulted the daughter of the trial judge's legal secretary). However, both the motion for new trial filed in the state court and the Petitioner's brief to the MAC on appeal alleged only that the trial judge had represented Petitioner in one case in which he was convicted of a sexual assault. Because Petitioner's submissions are unclear on this matter, I will assume he is asserting the same factual and legal claims presented to the state court, *i.e.,* that the trial judge represented him in one prior case in which he was convicted of sexual assault.

17

new trial without any detailed findings precluded him from challenging the specifics of the denial.

The MAC noted the Petitioner raised this issue for the first time in his motion for new trial rather than in his direct appeal and therefore, it was waived.[8]  The MAC did not excuse the waiver.  The MAC went on to note that it had reviewed the record and found no "hint of unfairness to the [Petitioner] or any prejudice by the judge against [him]." *Tavares*, slip op. at. 8. The court further noted that the trial judge had simply denied the motion without explanation and while it would have been helpful if the trial judge had indicated his reasons for the denial, the question of recusal is within the discretion of the judge and since the trial judge denied the motion for new trial, the court would assume that he was satisfied that "his representation of the defendant fifteen years earlier in an unrelated proceeding posed no risk of prejudice, bias or ground for recusal". *Id.*

The respondent argues that since the MAC determined that Petitioner had procedurally defaulted on this claim, habeas review is barred unless Petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure of this Court to consider the claim will result in a fundamental miscarriage of justice.  Respondent further argues that Petitioner has not attempted to establish "cause and prejudice", nor has he alleged the likelihood of a fundamental miscarriage of justice, therefore this claim must be denied.

---

[8]In its brief to the MAC, the Commonwealth asserted that the claim was waived because Petitioner had failed to raise it in his direct appeal. *Supp. Ans.* (Docket No. 21), *Ex. 4* (Commonwealth's Brief to the MAC), at p. 45.

### Whether Petitioner Has Procedurally Defaulted This Claim

" 'In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred' ... The default may be excused, and the bar to federal habeas review removed, only in certain circumstances: where 'the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice' ". *Obershaw v. Lanman*, 453 F.3d 56, 67-68 (1st Cir. 2006)(quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546 (1991)). Furthermore, the MAC's finding that Petitioner waived this claim constitutes an independent and adequate state ground only if Massachusetts courts consistently and regularly apply the waiver rule in such circumstances. *See Gunter v. Maloney*, 291 F.3d 74, 79 (D.Mass. 2002).

I agree with Respondent that the MAC found that Petitioner had procedurally defaulted this claim by not raising it in his direct appeal. Furthermore, the SJC regularly enforces the rule that a claim which is not raised at the first opportunity is waived and, generally will be reviewed only to determine whether the alleged error creates a substantial risk of a miscarriage of justice. *See Commonwealth v. Randolph*, 438 Mass. 290, 780 N.E.2d 58 (2002). At the same time, the MAC addressed the merits of Petitioner's claim under the more lenient standard of review normally applicable to such claims rather than the substantial miscarriage of justice standard. Where the state court addresses the merits of the defendant's federal constitutional claim, its decision arguably does not rest on independent and adequate state grounds; under such circumstances, the state court may be deemed to have excused the waiver and federal habeas

19

review is not barred. *See Simpson v. Matesanz*, 175 F.3d 200, 207 n. 4 (1st Cir. 1999); *Manisy v. Maloney*, 283 F.Supp.2d 307, 312 (D.Mass. 2003).

In this case, although the MAC went on to address the merits of Petitioner's claim, it did not conduct a federal constitutional analysis, rather the court relied solely on state law in denying Petitioner's claim[9]. Therefore, I find that the MAC did not intend to excuse Petitioner's waiver and its decision constitutes independent and adequate state ground for denying habeas relief. *Manisy*, 283 F.Supp.2d at 212 (state court's waiver of default only effective if its decision rests primarily on federal law or is interwoven with federal law and when independence of any possible state law ground is not clear from face of opinion). Consequently, Petitioner is entitled to review of this claim only if he establishes cause for his failure to have timely raised the issue and prejudice, or if he demonstrates that failure of this Court to address his claim will result in a fundamental miscarriage of justice. To establish cause for the default, Petitioner would have to show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule". *Gunter v. Maloney*, 291 F.3d 74, 81 (1st Cir. 2002). Petitioner has made no attempt to establish cause for his failure to raise the issue on direct appeal [10] or prejudice therefrom.

The question of whether Petitioner has argued that failure to review this claim would result in a fundamental miscarriage of justice is a little more complex. "To show that a

---

[9]In making its decision, the MAC cited *Commonwealth v. Gogan*, 389 Mass. 255, 449 N.E.2d 365 (1983). In *Gogan,* the SJC discussed the obligation of a judge to recuse himself in a proceeding where his impartiality might be questioned. The SJC cites to the Massachusetts Declaration of Rights, the applicable Massachusetts code of judicial conduct and Massachusetts case law. There is no discussion of federal constitution law.

[10]Indeed, from the record it appears that the reason counsel failed to raise the issue on direct appeal was Petitioner's failure to inform him of trial judge's alleged conflict of interest.

fundamental miscarriage of justice of justice would occur in the habeas context, 'petitioner must establish actual innocence' ... To do this, 'petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'". *Id.* (internal citation and citation to quoted cases omitted).   For the following reasons, I find that Petitioner has failed to make such a showing.

Petitioner repeatedly asserts in his Petition and other submissions to the Court that the trial judge's failure to recuse himself and/or to make detailed findings when denying his motion for new trial on this issue constituted a "substantial miscarriage of justice".  However, there is nothing in the Petitioner's submissions to suggest that his use of the phrase "substantial miscarriage of justice" equates to the "fundamental miscarriage of justice standard" which applies in federal habeas proceedings.  On the contrary, from the context in which he uses the phrase, it is clear that he is referring to the Massachusetts state law "miscarriage of justice" determination rather than the federal habeas "fundamental miscarriage of justice" standard.  I so find because nowhere in his submissions does Petitioner argue or otherwise attempt to establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  Furthermore, after reviewing the record before me, while I can agree the case against the Petitioner was not airtight, it is unlikely that Petitioner could make this showing.

Because Petitioner has failed to establish actual innocence, failure to address this claim would not result in a fundamental miscarriage of justice.  Therefore, for the reasons set forth above, I find that there is an independent and adequate state ground for denying this claim, and that it should be dismissed.

21

## Conclusion

It is recommended that Edward Tavares, Jr.'s Petition for Writ of Habeas Corpus, as amended (Docket No. 10) be denied.

## Notice to the Parties

The parties are advised that under the provisions of Rule 3(b) of the Rules for the United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis of such objection. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. *See United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13,14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). *See also, Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985).

/s/ Timothy S. Hillman
TIMOTHY S. HILLMAN
MAGISTRATE JUDGE

22