UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
EDWARD TAVARES, JR.,                )
                                    )
            Petitioner,             )
                                    )
      v.                            )   Civil Action No.
                                    )   04-40059-FDS
STEVEN O'BRIEN,                     )
                                    )
            Respondent.             )
_____)

MEMORANDUM AND ORDER ON
REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

SAYLOR, J.

By Order of Reference dated February 5, 2005, the amended petition of Edward Tavares, Jr., for a writ of habeas corpus was referred to Chief Magistrate Judge Swartwood for findings and recommendations pursuant to 28 U.S.C. § 2254. The matter was reassigned to Magistrate Judge Hillman on February 16, 2006. On March 7, 2007, the Magistrate Judge issued a written Report and Recommendation concluding that Tavares's petition should be denied.

Petitioner timely filed written objections to the Report and Recommendation on March 13, 2007. Petitioner specifically objects to the standard of review applied by the Magistrate Judge and makes a blanket objection to the remainder of the Report and Recommendation.[1]

Pursuant to 28 U.S.C. § 636(b)(1), this Court has made a *de novo* determination regarding the Magistrate Judge's findings and recommendations. For the reasons set forth below, and with

---

[1] Petitioner incorporated his memorandum in support of his petition for habeas corpus into his objections to the Report and Recommendation, effectively objecting to every finding made by the Magistrate Judge. (Objections at 14).

certain modifications, the Court will accept the Report and Recommendation and the amended petition for writ of habeas corpus will be denied.

I.     **Background**

Petitioner was convicted in state court of aggravated rape and assault with intent to kill on March 31, 1987. He was sentenced to a term of life imprisonment for the aggravated rape and a concurrent eight-to-ten year term for the assault with intent to murder. After petitioner's direct appeal of his conviction was denied, *Commonwealth v. Tavares*, 27 Mass. App. Ct. 637 (1989), he moved for a new trial. The motion for a new trial was denied by endorsement and without specific findings. *Commonwealth v. Tavares*, 2003 WL 554512, at *1 (Mass. App. Ct. Feb. 27, 2003).

Petitioner appealed the denial of the motion for a new trial to the Massachusetts Appeals Court, contending that (1) he had received ineffective assistance of trial counsel, (2) he received ineffective assistance of appellate counsel as a result of the failure to raise the issue of his trial counsel's performance in his direct appeal, and (3) his due process right to a fair trial was violated because the trial judge, who had previously represented petitioner in a sexual assault case, should have recused himself. *Id.* The Appeals Court affirmed the denial of petitioner's motion for a new trial, ruling that petitioner had not received ineffective assistance of counsel at trial. *Id.* at *1-3.[2] The court also concluded that petitioner's appellate counsel was not ineffective for failing to raise the issue of trial counsel's performance in the direct appeal. *Id.* at *3. With regard to the due process claim, the court found that petitioner had waived the issue by failing to raise it in his

---

[2] A detailed summary of the Appeals Court's findings was set forth in the Report and Recommendation, which will not be repeated here. *(See* Report and Recommendation at 3-4).

direct appeal. *Id.* at *4. Further, the court stated if the claim were reviewed on the merits, the decision concerning recusal was left to the discretion of the trial judge and his decision not to recuse himself was not error under the circumstances. *Id.*

The Massachusetts Supreme Judicial Court subsequently denied petitioner's Application for Leave to Obtain Further Appellate Review, and petitioner then filed the present action.

**II.**     **Analysis**

    **A.**     **Standard of Review**

An application for a writ of habeas corpus brought by a state prisoner shall not be granted "with respect to any claim adjudicated on the merits in State court proceedings" unless the adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the "unreasonable application" prong of the statute, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principles from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dolinger v. Hall*, 302 F.3d 5, 9 (1st Cir. 2002) (*quoting Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)).  The "unreasonable application" determination "must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the court proceedings.  Nevertheless, factually similar cases from the lower federal courts may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." *Rashad v. Walsh*, 300 F.3d 27, 35

(1st Cir. 2002).

An incorrect state court decision is not necessarily an "unreasonable" decision. *See Williams,* 529 U.S. at 410-11; *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). The Report and Recommendation quoted the following language from *O'Brien v. Dubois*:

> the "unreasonable application" clause does not empower a habeas court to grant the writ merely because it disagrees with the state court's decision, or because, left to its own devices, it would have reached a different result. Rather, for the writ to issue, the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes.

145 F.3d 16, 25 (1st Cir. 1998). In *McCambridge v. Hall*, however, the First Circuit relaxed its reading of the "unreasonable application" clause, thereby overruling *O'Brien*. 303 F.2d at 36. The *McCambridge* court decided that

> if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application . . . . '[S]ome increment of incorrectness beyond error is required.' The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.

*Id.* (citation omitted). While it does not appear that the Report and Recommendation actually applied the more strict *O'Brien* standard,[3] the issue is moot as this Court has conducted a *de novo* review according to the *McCambridge* standard.

### B.  Ineffective Assistance of Trial Counsel

Petitioner first contends that he received ineffective assistance from his trial counsel as a result of counsel's failure (1) to call alibi witnesses that he said he would call in his opening

---

[3] For example, the Magistrate Judge applied the correct *McCambridge* standard, not the *O'Brien* standard, in his analysis of petitioner's ineffective assistance of counsel claims. (Report and Recommendation at 12).

4

statement, (2) to object to a physician's testimony concerning semen found in the victim's vagina, (3) to seek additional forensic testing of the victim's clothing and the vaginal sample obtained from her, and (4) to seek sanctions against the Commonwealth for losing the rape kit evidence. The Magistrate Judge agreed with the Appeals Court and found each of petitioner's ineffective assistance arguments to be without merit.

As an initial matter, petitioner contends that the state court failed to address his federal claims on the merits, and therefore the Magistrate Judge erred by giving those state court proceedings deference under § 2254(d). (Objections at 8-9). Specifically, petitioner contends that the Appeals Court applied the state standard, not the federal standard, for ineffective assistance of counsel, and therefore failed to address his federal claims on the merits. (Objections at 11). However, even if the state court applied the state standard (as set forth in *Commonwealth v. Saferian*, 366 Mass. 89 (1974)) instead of the federal standard (as set forth in *Strickland v. Washington,* 466 U.S. 668 (1984)), the distinction is meaningless, because the two standards are functionally identical. *See Scarpa v. Dubois*, 38 F.3d 1, 7 n.4 (1st Cir. 1994) (describing the *Saferian* and *Strickland* standards as "functionally identical"); *Teti v. Dennehy*, No. 05-10234, 2006 WL 2161882, at *3 (D. Mass. Aug. 1, 2006) (noting the *Saferian* standard to be at least as favorable to defendants as the *Strickland* standard and describing the standards as "essentially equivalent"); *Commonwealth v. Nardone*, 406 Mass. 123, 126 n.3 (1989) ("[I]f ineffective assistance is present under the Massachusetts standard, it is necessarily also present under the Federal standard.").

Upon *de novo* review, this Court finds that the Magistrate Judge correctly applied the deferential standard of review under § 2254(d) because the Appeals Court effectively addressed

the merits of petitioner's federal claims, notwithstanding the fact that it failed to cite directly to federal authority. The Court will therefore review petitioner's claims according to the standard set forth in § 2254(d).

### 1.     **Failure to Call Alibi Witnesses**

Petitioner first contends that he received ineffective assistance of counsel because his trial counsel failed to call alibi witnesses after having told the jury in his opening statement that he would do so. The Appeals Court rejected the claim on the grounds that the failure to call the alibi witnesses was not a product of inattention, inadequate preparation, or incompetency; rather, the decision was forced upon counsel by events over which he had no control and could not anticipate. *Commonwealth v. Tavares*, No. 01-P-540, 2003 WL 544512, at *1 (Mass. App. Ct. Feb. 27, 2003). Further, the court found that "any prejudice to the [petitioner] was mooted by the judge's instructions to the jury to 'forget who didn't come in and consider those that did.'" *Id.* at *2.

Petitioner must establish that the Appeals Court's decision was an unreasonable application of the *Strickland* standard: that is, that the decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)

The Report and Recommendation correctly noted that where the Supreme Court has not adopted explicit guidelines for evaluating an issue, decisions of lower federal courts should be examined to determine how the general federal standard should be applied to a particular issue or set of facts. *Ouber v. Guarino*, 293 F.3d 19, 26 (1st Cir. 2002). When conducting that analysis, the Magistrate Judge determined that "cases that premise a habeas writ on an unfulfilled promise

during opening argument generally require a degree of specificity in the promise and a degree of contemporaneousness between the promise and jury deliberations." (Report and Recommendation at 11, *quoting Phoenix v. Matesanz,* 233 F.3d 77, 84 (1st Cir. 2000)). Because petitioner's case did not present such a circumstance, the Magistrate Judge concluded that the Appeals Court's determination was not unreasonable and should not be disturbed. (Report and Recommendation at 11-12).

This Court agrees with the conclusion that the Appeals Court's determination was not unreasonable and should stand. It disagrees, however, with the Magistrate Judge's reasoning; the analysis should focus on the Appeals Court's stated conclusion—that the failure to call the alibi witnesses was not a product of inattention, inadequate preparation, or incompetency—rather than what the Appeals Court could have concluded, but did not.

Numerous federal courts have addressed the question of whether counsel's failure to call a witness promised during an opening statement amounted to ineffective assistance. That determination is highly fact-specific. *See United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993) (finding counsel not ineffective for failing to call promised expert where, after trial commenced, counsel discovered that expert could be easily impeached and testimony sought from witness introduced by another witness). Here, trial counsel only learned of the alibi witnesses' unwillingness to testify after the trial had already begun. As the Appeals Court found, his decision not to call the witnesses was not based on incompetency or inadequate preparation; he was forced by events to take a different direction. Under the circumstances, the requisite standard for ineffective assistance has not been met. *See Harrison v. Motley*, 478 F.3d 750, 759 (6th Cir. 2007) (finding failure to present promised alibi witnesses objectively reasonable where witnesses

recanted after trial commenced); *Williams v. Bowersox*, 340 F.3d 667, 672 (8th Cir. 2003) (finding no ineffective assistance where counsel reconsidered and decided not to present promised witnesses after trial was underway); *Commonwealth v. Nardone,* 406 Mass. 123, 127-28 (1989) (applying both *Strickland* and *Saferian* standards, no ineffective assistance where failure to call promised expert was "a decision forced upon him by events over which he had no control").

Upon *de novo* review, this Court concludes that petitioner's ineffective assistance claim based on counsel's failure to present promised alibi witnesses is without merit, and the objection is therefore overruled.

### 2. Failure to Object to Testimony Concerning Lost Evidence

Petitioner next contends that trial counsel was ineffective for failing to object to the testimony of Dr. Barbieri, a gynecologist who had obtained evidence from the victim's rape kit. Dr. Barbieri testified that semen had been recovered from the victim. Petitioner contends that Dr. Barbieri's testimony was inadmissible because (1) the rape kit had been lost prior to trial, (2) the testimony was hearsay because the doctor had not performed the tests on the rape kit evidence, and (3) petitioner was prejudiced by the testimony because there was no other evidence that a rape had occurred.

The Appeals Court concluded that trial counsel's failure to object did not amount to ineffective assistance because evidence concerning the presence of semen had already been properly admitted and that there was no prejudice because the evidence was cumulative. (Report and Recommendation at 12-13, 15-16). The Magistrate Judge concluded that the Appeals Court did not unreasonably apply *Strickland* in making that finding. (Report and Recommendation at 13). Upon *de novo* review, this Court agrees.

### 3. Failure to Investigate by Conducting Additional Forensic Testing

Petitioner next contends that counsel was ineffective in failing to seek additional testing of the clothing worn by the victim and of the vaginal samples taken from her. The Appeals Court concluded that counsel's decision not to conduct further forensic testing (including testing of the semen sample recovered from the victim) was strategic. (Report and Recommendation at 14-15). The Appeals Court reasoned that further testing could have inculpated rather than exculpated the petitioner and all testing results would have had to be turned over to the Commonwealth. *Commonwealth v. Tavares*, No. 01-P-540, 2003 WL 554512, at *2 (Mass. App. Ct. Feb. 27, 2003). The Magistrate Judge agreed with the Appeals Court.

After a *de novo* review, the Court disagrees with the finding that counsel's decision not to conduct additional forensic tests was reasonable. However, the Court finds that petitioner did not suffer actual prejudice. Accordingly, petitioner's claim of ineffective assistance for failing to seek additional testing is without merit.

#### a. Counsel's Failure to Investigate

As noted, the Appeals Court concluded that counsel's decision not to conduct additional forensic testing was reasonable because counsel would have had to produce all test results, both exculpatory and inculpatory, to the prosecution. In making that decision, the court relied on the cases of *Trigones v. Hall*, 115 F. Supp. 2d 158 (D. Mass. 2000), and *Commonwealth v. McMaster*, 21 Mass. App. Ct. 722 (1986). *Tavares*, 2003 WL 554512, at *2. In *Trigones*, counsel intentionally delayed determining the location of a murder weapon for fear of having to

turn the weapon over to the government. 115 F. Supp. 2d at 170.[4]  In *McMaster,* counsel decided not to put a witness on the stand for fear that the witness would inculpate the defendant and counsel would not be able to control the live testimony. 21 Mass. App. Ct. at 735-36.

The Appeals Court did not, however, address Mass. R. Crim. P. 14, which governs discovery in criminal cases. That rule only permits the Commonwealth to discover from the defendant relevant evidence that defendant *intends to use at trial*. Mass. R. Crim. P. 14(a)(3)(A). Because it is highly unlikely that petitioner's counsel would have ever intended to introduce at trial the results of forensic tests that inculpated petitioner, counsel would not have had to produce those results to the prosecution.

The Appeals Court found that counsel's failure to conduct additional testing was a tactical decision that was not manifestly unreasonable. *Tavares*, 2003 WL 554512, at *2.  Under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91.  Here, petitioner's counsel made a strategic choice after a less-than-complete investigation into the forensic evidence; the decision is therefore reasonable only to the extent that "reasonable professional judgment" supports the limited investigation.

The *Strickland* court cites the American Bar Association Standards for Criminal Justice as one possible guide for determining what constitutes reasonable professional judgment. *Id.* at 688;

---

[4] The standards governing defense counsel's possession of a possible murder weapon and counsel's production of the weapon to the government would not ordinarily apply to defense counsel's possession of forensic test results.  *See* ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.6 (3d ed. 1993).

*see also Wiggins v. Smith*, 539 U.S. 510 (2003) (citing to ABA standards addressing the performance of counsel in death penalty cases in support of finding counsel ineffective). The relevant ABA Standard states that

> [d]efense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to defense counsel of facts constituting guilt or the accused's stated desire to plead guilty.

ABA STANDARDS FOR CRIMINAL JUSTICE 4-4.1 (3d ed. 1993).

While the ABA standards are, of course, only a guide, it seems clear that forensic testing—which could call into question whether petitioner had intercourse with the victim—was certainly an "avenue" deserving of defense counsel's exploration. Counsel's failure to do so was not a strategic choice, but a failure to investigate the facts. The Court recognizes its obligation to be highly deferential to the findings of the Appeals Court; nonetheless, the Court concludes that counsel fell below the threshold of reasonableness in neglecting to conduct tests, or even attempting to conduct tests, under the circumstances presented in this case.

### b. Actual Prejudice

That conclusion does not, however, end the inquiry; the petitioner must show actual prejudice under the second prong of the *Strickland* analysis. 466 U.S. at 687 (burden is on the petitioner to establish both ineffective performance and actual prejudice). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

11

Here, petitioner "has made no showing that better work [by trial counsel] might have accomplished something material for the defendant." *Tavares*, 2003 WL 554512, at *3. Petitioner makes no showing, for example, that the results of additional forensic testing would have vindicated him. The Appeals Court identified the following inculpatory evidence and concluded as a result that the additional tests would not have been exculpatory: (1) two witnesses observed the victim and petitioner leaving the bar together, (2) the victim testified that when she resisted the petitioner's sexual overtures, he began to hit her, (3) when the victim regained consciousness, she was naked from the waist down and her blouse and bra had been torn apart, (4) the victim identified petitioner as her attacker, and (5) petitioner was found hiding from police at the time of his arrest. *Id.* at *2-3. In light of that evidence, the probability that the testing evidence would have been exculpatory is obviously slight.

The Court, of course, recognizes the possible "Catch-22" quality to this issue: petitioner must show that the evidence that was not obtained would have made a material difference, but he cannot show that it would have made a material difference because it was never obtained. Under different circumstances—for example, in a case relying solely on a fleeting eyewitness identification—the Court might view the matter in a more critical light. Here, however, the evidence of petitioner's guilt was very substantial. *See Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) ("[I]neffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case."). The law requires that the petitioner show actual prejudice, and in the light of the considerable proof against him, he has failed to do so.

Under the circumstances, the Court finds that petitioner failed to show there is a

reasonable probability that, but for counsel's deficient performance, the results of the trial would have been different. Accordingly, upon *de novo* review, the Court concludes that petitioner's ineffective assistance claim based on counsel's failure to seek additional testing must be rejected.

### 4. Failure to Seek Sanctions for Loss of Evidence

Petitioner next contends that his trial counsel was ineffective for failing to file a motion seeking sanctions against the Commonwealth as a result of the loss of the rape kit. The Appeals Court found that because the results of a laboratory sample were properly admitted into evidence and because those results were duplicative of the rape kit evidence, petitioner was not prejudiced by trial counsel's failure to seek exclusion of testimony about the rape kit or to seek sanctions. (Report and Recommendation at 16). The Magistrate Judge concluded that the Appeals Court did not unreasonably apply *Strickland* in making that finding. Upon *de novo* review, this Court agrees.

### C. Ineffective Assistance of Appellate Counsel

Petitioner next contends that his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel on direct appeal. The Magistrate Judge rejected that argument, concluding that because petitioner's claims of ineffective assistance of trial counsel were without merit, appellate counsel's failure to raise the claims on direct appeal was neither unreasonable nor prejudicial. (Report and Recommendation at 17). Upon *de novo* review, this Court agrees.

### D. Trial Judge's Failure to Recuse

Finally, petitioner contends that the trial judge erred in denying his motion for a new trial on the grounds that the judge should have recused himself because he had been petitioner's

attorney in another case fifteen years earlier. The Magistrate Judge rejected that claim, concluding that federal habeas review of the claim was barred because petitioner defaulted this claim in state court pursuant to an independent and adequate state procedural rule. (Report and Recommendation at 21). Upon *de novo* review, this Court agrees.

**III.    Conclusion**

For the foregoing reasons, petitioner's objections to the Report and Recommendation of the Magistrate Judge are overruled, and, with the modifications discussed above, the Report and Recommendation is accepted by the Court pursuant to 28 U.S.C. § 636(b)(1). The amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED and this matter is accordingly DISMISSED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: September 27, 2007